UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 23-cr-224-DLF |
| v. : | |
| : | |
| JONATHAN COPELAND, : | |
| : | |
| Defendant. : | |

## UNITED STATES' OMNIBUS RESPONSE

The United States respectfully submits this response to the defendant's various motions, filed on October 27 and 30, 2023. Such motions include: (1) the defendant's Motion to Produce Evidence . . . Under Federal Rules of Evidence 404(b) and 609 (ECF No. 37); (2) the defendant's Motion *in Limine* to Preclude Unseen Signage, Fencing, or Other Barriers and to Preclude Arguments that Mr. Copeland is Guilty Based on the Actions of Others (ECF No. 38); (3) the defendant's Motion for Discovery (ECF Nos. 39 and 45); (4) the defendant's Motion for Early Disclosure of All "Jencks Act" Material (ECF No. 40); (5) the defendant's Motion to Require Law Enforcement Officers to Retain Rough Notes and Writings (ECF No. 41); (6) the defendant's Motion to Compel Government to Disclose Expert Witnesses (ECF No. 42); (7) the defendant's Motion to Compel Disclosure of Plea Bargains, Preferential Treatment, and Promises to Government Witnesses (ECF No. 43); and (8), the defendant's Selective Prosecution Motion (ECF No. 44).

**TABLE OF CONTENTS**

I.  Factual Background ................................................................................................................. 2

II. Response to ECF No. 37 – Defendant's Motion to Produce Evidence Pursuant to Fed. R. Evid. 404(b) and 609 ............................................................................................................ 2

III. Response to ECF No. 38 – Defendant's Motion to Preclude Unseen Signage, Fencing, or Other Barriers and to Preclude Arguments that he is Guilty Based on the Actions of Others ....................... 3

IV. Response to ECF Nos. 39/45 – Defendant's Motion for Discovery ........................................... 6

V. Response to ECF No. 40 – Defendant's Motion for Early Disclosure of All "Jencks Act" Material ................................................................................................................................. 8

VI. Response to ECF No. 41 – Defendant's Motion to Require Agents to Retain Rough Notes and Writings ............................................................................................................................... 9

VII. Response to ECF No. 42 – Defendant's Motion to Compel Disclosure of Government Experts ... 9

VIII. Response to ECF No. 43 – Defendant's Motion to Compel *Giglio* ........................................... 10

IX. Response to ECF No. 44 – Defendant's Selective Prosecution Motion ..................................... 10

## I.   Factual Background

The government respectfully refers to its recitation of facts as described in its Omnibus Motions *in Limine* (ECF No. 36).

## II.  Response to ECF No. 37 – Defendant's Motion to Produce Evidence Pursuant to Fed. R. Evid. 404(b) and 609

The defendant seeks notice of any Rule 404(b) or 609 evidence. With respect to the former, the government has no additional 404(b) to provide or notice. To the extent we learn of any additional information that changes this determination, we will file a Motion in accordance with Rule 404(b).

As to Rule 609, on November 14, 2013, the defendant was convicted of misdemeanor assault, in violation of Ohio state law, in Ottawa County Court Case Number 2013CRB00304-1. He received a sentence of time served, followed by 12 months of probation. To the extent the defendant testifies in February of 2024, his conviction will be just over ten years old. Regardless of whether subsection (a) or (b) applies, in terms of timing, the operative analysis is set forth in Rule 609(b): evidence of a conviction is admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect.

Here, the defendant stands accused of committing a series of violent acts on January 6, 2021.

To the extent he takes the stand and testifies about a character trait of peacefulness or law-abiding behavior, the fact of a prior conviction of an assault would be immensely probative as to whether a trier of fact should or could credit his testimony. While its prejudicial effect is certainly not zero,[1] the balancing test as imposed should give meaningful opportunity for a jury to assess whether the defendant is credible or not credible, and whether his prior misdemeanor conviction of assault undercuts any attempt to downplay his alleged actions in this case.

### III. Response to ECF No. 38 – Defendant's Motion to Preclude Unseen Signage, Fencing, or Other Barriers and to Preclude Arguments that he is Guilty Based on the Actions of Others

Evidence beyond the defendant's gaze on January 6 is both relevant and admissible. The defendant's motion *in limine* to preclude so-called unseen evidence should be denied.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993). It is a "liberal" standard, *United States v. Moore*, No. 18-cr-198, 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022). "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402. Additionally, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998). Rules 401, 402, and 403 do not support the defendant's requested relief.

In his "Motion in Limine to Preclude Unseen Signage, Fencing, Announcements, or other Barriers," the defendant seeks to preclude "any evidence, discussion, or argument regarding signs,

---

[1] We nevertheless question how much prejudice this prior conviction actually entails, given that a misdemeanor assault, without more, pales in comparison to the alleged acts committed by the defendant on January 6, 2021.

fencing, dispersal announcements, barricades or other barriers unless the offering party first lays a foundation that defendant actually was in a place to witness such features." ECF No. 38, at 1. His argument appears to misconstrue some of what the government has to prove and the nature of his particular crimes as a collective action.

In so arguing, the defendant appears to acknowledge, before turning to other specific crimes, that Counts 5 and 7 "typically would allow relevant evidence of rioters' collective actions to prove disruption of Congress." ECF No. 38, at 3. But the government's presentation is not limited to those charges. Indeed, multiple counts deal with legal issues that the government must prove in its case-in-chief. For example, the counts related to a restricted building or grounds (Counts 4 and 6) require that the government establish the *objective* existence of a restricted building or grounds.

By law, "the term 'restricted buildings or grounds' means any posted, cordoned off, or otherwise restricted area—of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). The government must prove—independently—that the defendant entered or remained in an area that was posted, cordoned off, or otherwise restricted.

For both Counts 4 and 6, the government must also show that the defendant engaged in the conduct *knowingly*. For this element the defendant seems to agree that the government can present evidence of 'signs, fencing, dispersal announcements, barricades, or other barriers' to show the defendant's knowledge. *See* ECF No. 38, at 2. An apt example can be found in *United States v. MacAndrew*, where Judge Kollar-Kotelly found:

> [The defendant's] knowledge, like a snowball rolling down a ski slope, accumulated that day. Her suspicions undoubtedly started when . . . she passed "Area Closed" signs affixed to strewn fencing. If she did not know at that time her presence on Capitol grounds was unlawful, her awareness must have been stronger when she clambered over dismantled bike racks and snow fencing even closer to the Capitol building with their own "Area Closed" signs. If, after seeing *those* signs, she did not know her presence was unlawful after *those* signs, then surely she knew she was unlawfully present when she encountered a line of armored Metropolitan Police Department

> ("MPD") officers marching past Capitol Police officers guarding the Capitol building behind bike racks affixed, again, with "Area Closed" signs.
>
> Assuming, for the sake of argument, that she *still* did not know she was not permitted on Capitol grounds or in the Capitol building, she must have known when she arrived to the Upper West Terrace and met four individuals she testified she knew to have been pepper sprayed. Or, to enter the realm of the fabulist, perhaps it was only when she entered the Capitol through a broken door, an emergency siren blaring. These signs, and other detailed below, undoubtedly endowed [the defendant] with the knowledge that her presence and protest in the Capitol was unlawful. Nevertheless, she remained.

No. 21-cr-730-CKK, January 17, 2023, 2023 WL 196132 at *1-2.

Much like in *MacAndrew*, the government will provide the factfinder with a series of impediments that the defendant experienced personally. But the requirement that the government prove the defendant acted *knowingly* does not negate the government's obligations to prove the restricted area *objectively*. In light of the elements of the charged offenses, evidence of the restricted perimeter—including barriers, fencing, and signage—is relevant, probative, and admissible, regardless of whether it was within the defendant's eyesight.

Similarly, the government's evidence is not only cabined to those counts. As the defendant acknowledges, the defendant's presence in a violent mob is what disrupted Congress, and thus, his actions in joining a mob of others bears on his *mens rea* for each of the charged offenses. *See United States v. Grider*, 21-CR-00022 (CKK) Dkt. 150 at 25 (Dec. 21, 2022) ("Membership in a mass of rioters is particularly likely to disrupt Congressional business. Even a peaceful crowd standing on the Floor of Congress is likely to shut down Congressional proceedings."). Thus, it will be relevant for the government to present evidence bearing on the mob's actions in breaching the Capitol, including what barriers, fences, and signs surrounded the Capitol.

The probative value of such evidence is even higher in a case such as this one, where the defendant participated in disorderly and disruptive acts at a number of different locations on Capitol grounds. In any event, while the government does not anticipate focusing its evidentiary presentation on areas of the Capitol where the defendant was not present, the government will need to present

evidence to show the actions of other rioters in various other areas of the Capitol building and grounds, including evidence around other barriers, fencing, and signage, in order to show the overall riot, its effects, the context of the defendant's actions, and why the orderly conduct of a session of Congress was disrupted. None of the rioters were authorized to enter the restricted perimeter or the Capitol building, and their actions around barriers and signs are relevant to the disorderly nature of the mob the defendant joined. *See United States v. Stephanie Baez. See* 21-cr-507-PLF, ECF No. 71 (denying virtually the same motion in a January 6 misdemeanor case, noting that the government could present evidence of features and disorder not necessarily observed by the defendant herself).

Finally, the defendant is also charged with Civil Disorder (Counts 1 and 3). Civil Disorder requires the presence of a public disturbance involving acts of violence by groups of three or more persons. *See, e.g.*, *United States v. Alam*, 21-cr-190-DLF, ECF No. 104, at 25. By its very nature, the government must therefore prove a public disturbance. Doing so by artificially limiting the presentation of evidence would unnaturally prevent the trier of fact from assessing all relevant evidence.

**IV.   Response to ECF Nos. 39/45 – Defendant's Motion for Discovery**

The defendant's motion for discovery appears to be a relatively normal request for constitutional and statutory information. The government is in receipt of this motion and appreciates its constitutional and statutory obligations. The defendant's only request, with any specificity, is detailed as "Information and Documentation Related to Unidentified Agents" and "Information and Documentation Related to D.C. Metropolitan Police Department Undercover Operations". ECF No, 45, at 8-11.

As to the former, the government is unaware of any "undercover" or government "agents" who "may have facilitated the provocation of the Defendant's alleged actions." ECF No. 45, at 8-9. Here, the defendant's request is far too broad and attenuated for the government to reasonably

respond, but to the extent the defendant has proffered any evidence that a specific person prompted him to commit the crime or trespass into a restricted area, the government is unaware of any such person as it relates to the defendant's knowledge or path.

Perhaps more to the point, the defendant's request has no legal consequence. Even if one assumes that there existed a government agent who acted improperly,[2] the defendant's request is untethered to the law. Judge Lamberth recently dealt with this issue in the slightly different context of a Motion for Discovery and *Brady* Motion. *See United States v. Nichols, et al*, 21-cr-117-RCL, ECF No. 266. As then described by the Court, "[t]he basic idea is that the crisis at the Capitol was an elaborate setup by the United States government designed to ensnare peaceful Trump supporters . . . On this view, shadowy teams of plainclothes government agents orchestrated the attack, leaving a far larger number of innocent Americans to take the fall." *Id.* at *13. But it takes "more than the adverse party's conclusory suspicions to impel the adjudicator to delve behind the government's representation." *Id.* at *14, 20 ("Mr. Nichols repeatedly advances this view, although he does not provide evidentiary support . . . he has not offered firm evidence of what information, if any, the alleged informants would provide. But Mr. Nichols has not offered a factually grounded explanation of how information from the alleged informants would help prove him innocent.").

Here, the defendant's request for this information does not provide any proffer about how the presence of an alleged agent would have prompted him to commit a crime he would have otherwise not committed.[3] This is not to say that the government will not continue to coordinate with counsel,

---

[2] To be clear, several defendants have been charged as current or former law enforcement officers who committed crimes on January 6, 2021. *See, e.g.*, *United States v. Mark Ibrahim*, 21-cr-496-TJK (DEA agent charged); *United States v. Karol Chwiesiuk*, 21-cr-536-ACR (Chicago Police officer charged and convicted); *United States v. Thomas Webster*, 21-cr-208-APM (Retired NYPD officer charged and convicted); *United States v. Jared Wise*, 23-cr-184-RDM (FBI agent charged).

[3] As previously referenced in the government's Motion *in limine*, it is beyond the power of plainclothes officers or agents – whether by purported conduct or inaction – to "unilaterally abrogate criminal laws duly enacted by Congress." *See United States v. Chrestman*, 525 F. Supp. 3d 14, 33

7

particularly if there are outstanding discovery questions. But to the defendant's bottom line – is the government currently aware of any "agent provocateur" who directly affected the defendant's conduct on January 6, 2021? The answer is no.

With respect to the second category, the government has produced discovery related to MPD's electronic surveillance unit, designated as highly sensitive or sensitive under the governing protective order. *See* Global Production Letter, dated October 13, 2023, at *13, 42, 47-48 (provided via email and USAFX on October 17, 2023). This information is Bates numbered, and accessible through the defendant's Relativity workspace. The government stands ready to address any outstanding discovery questions related to this material. Some of the material provided is redacted. To the extent the defendant needs information as it relates to a specific redaction, we can and will address that request.

Finally, the defendant's request for "all" MPD or ESU information is either too broad, irrelevant, and not supported by the law.[4] This includes reports or information about MPD or ESU outside of January 6, 2021, or requests for audio recordings of interviews. This information falls outside the scope of Rule 16, or the Constitution, and the defendant has provided no particularized proffer or request that militates in favor of such disclosure.

### V.     Response to ECF No. 40 – Defendant's Motion for Early Disclosure of All "Jencks Act" Material

The defendant seeks all Jencks material thirty days prior to trial. The Jencks Act – 18 U.S.C. § 3500 already establishes a timeline for production of Jencks materials. To extend that timeline by

---

(D.D.C. 2021). While the government concedes the possibility that the conduct of other persons *contemporaneously* observed by the defendant could be relevant to the defendant's state of mind during the crime (and could evidence his *mens rea*), no such proffer has been provided that necessitates specific discovery.

[4] The defendant also references *United States v. William Pope*, 21-cr-128-RC. *See* ECF No. 45, at *10 n.3 as an underlying basis for his requests. But the Court in *William Pope* did not find that the government intentionally or improperly withheld exculpatory information, notwithstanding Pope's rhetoric.

an additional 30 days is unnecessary. While the government does not object to a Jencks deadline in advance of trial, we ask for a more reasonable one, in keeping with the realities of trial. This Court's prior imposed deadlines are illustrative and appropriate. *See United States v. Zachary Alam*, 21-cr-190-DLF, August 31, 2023 Minute Order (imposing a *Jencks* requirement four days in advance of jury trial); *United States v. Guy Reffitt*, 21-cr-32-DLF, October 15, 2021 Minute Order (imposing a *Jencks* requirement 18 days before the first January 6 trial to proceed, whereas now, the Jencks material is more voluminous given the number of trials and repeat witnesses).

### VI. Response to ECF No. 41 – Defendant's Motion to Require Agents to Retain Rough Notes and Writings

In his motion, the defendant notes that it is important for the government to "preserve and produce any rough notes." ECF No. 41, at 2. We agree. The government is aware of its *Brady* obligations, as well as its obligations pursuant to the Jencks Act, and the government intends to fulfill all of them. As such, there is no need for the Court to enter the requested order, nor has the defendant demonstrated a need for such an order. In *United States v. Linwood Thorne*, 18-cr-389-BAH, Minute Order Dec. 12, 2019, Judge Howell denied a similar motion as moot, on virtually the same grounds.

### VII. Response to ECF No. 42 – Defendant's Motion to Compel Disclosure of Government Experts

In this motion, the defendant seeks identification of all government experts. At this juncture, the government has no experts to offer. If this changes, the government will comply with the strictures set forth in Fed. R. Crim. Pro. 16(a)(1)(G)(i). While the government does not anticipate tendering expert testimony, we nevertheless ask the Court to set a date for expert disclosures from both the government and the defendant closer in time to trial. *See* Rule 16(a)(1)(G)(ii) ("The court, by order or local rule, must set a time for the government to make its disclosures. The time must be sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence."); Rule 16(b)(1)(C)(i) ("At the government's request, the defendant must disclose to the government, in

writing, the information required by (iii) for any testimony that the Defendant intends to use under Federal Rule of Evidence 702, 703, or 705 ….").

### VIII. Response to ECF No. 43 – Defendant's Motion to Compel *Giglio*

In this motion, the defendant likewise seeks an order to compel *Giglio* material. This order is unnecessary. *Brady*, and its subset of *Giglio* impeachment information, is a constitutional right for a defendant. Thus, the government is always beholden to such an order. Creating a random date by which to produce such material in advance of trial is superfluous. To the extent the Court imposes an order, we would request a deadline of approximately one week in advance of trial. At this juncture, the government anticipates providing *Giglio* materials for law enforcement witnesses, if such material exists. We are not, however, aware of any plea bargains or preferential treatment of other witnesses, as requested in his motion. ECF No. 43, at 2.

### IX. Response to ECF No. 44 – Defendant's Selective Prosecution Motion

The defendant's selective prosecution motion compares the defendant to a single person – January 6 defendant Ray Epps – on the grounds that defendant Epps "committed roughly the same crime under roughly the same circumstances" as the defendant but was treated differently than the defendant. ECF No. 44, at 7. While his motion addresses commonplace legal principles on this subject, the defendant explicitly avers that his comparison class is solely defendant Epps. *Id.* ("Unlike other January 6th defendants whose selective prosecution motions have been rejected, Mr. Copeland does not attempt to compare himself to those who participated in the D.C. Climate Protests, Portland Protests, or Senate Confirmation Hearings Protests."). Thus, the government focuses its response on this comparator.

This Court is already familiar with the principles underlying the motion. *See United States v. Concord Management & Consulting LLC*, 18-cr-32-2-DLF, 2018 WL 10373652. A criminal defendant must show some evidence of discriminatory effect and intent to prevail on a motion for

discovery regarding a selective prosecution claim. *Id.* at *1. Specifically, a defendant must show that the prosecutor's decision "had a discriminatory effect *and* that it was motivated by a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (Emphasis Added). To show a discriminatory effect, the defendant must make a "credible showing of different treatment of similarly situated persons." *Concord*, 2018 WL 10373652, at *1. Persons are similarly situated "when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Id.* In doing so, the court must examine several factors, including relative culpability, the strength of the cases, a willingness to cooperate, and the potential impact of a prosecution on related investigations. *United States v. Bennett*, 2023 WL 6847013, at *2 (D.D.C. Oct. 17, 2023). For discriminatory purpose, however, the defendant must demonstrate that he was prosecuted because of his membership in an "identifiable group." *Id.* at *3.

Many judges have rejected January 6 defendants' requests for discovery pursuant to this claim, finding that the defendants have not presented "clear evidence" of prosecutorial misconduct. *See, e.g.*, *Bennett*, 2023 WL 6847013, at *2 (D.D.C. Oct. 17, 2023) (quoting *Armstrong*, 517 U.S. at 463-64 (governing selective prosecution claims)). This standard is "demanding" and must demonstrate that the government *singled* the defendant out for prosecution for an "impermissible reason such as race, religious or other arbitrary classification, including the exercise of protected statutory and constitutional rights." *Id.* at *2 (internal citations and punctuation omitted).

Here, the defendant's claim is meritless. The defendant's sole comparator is a single defendant, Ray Epps, who was prosecuted by the government and resolved his case pretrial and precharging. No "clear" evidence of misconduct has been meaningfully alleged, and there is no meaningful proffer as to a credible showing of distinct treatment in an improper way.[5] The defendant

---

[5] Indeed, multiple defendants have been charged for similar conduct as the defendant. *See, e.g.*, *United States v. Sean McHugh*, 21-cr-453-JDB, ECF No. 113 (using the metal sign as a weapon); *United States v. Jose Padilla*, 21-cr-214-JDB, ECF No. 101 (same); *United States v. Neefe, et al*, 21-cr-567-

11

cannot show discriminatory effect, when defendant Epps expressed a willingness to cooperate, including calling the FBI tip line to self-identify within hours of his photo being posted online and engaging in multiple extensive debriefs with the FBI. Conversely, the defendant has not expressed any meaningful willingness to accept responsibility, and engaged in more obstructive conduct than Epps.

The government need not address any of the nuanced factual differences[6] between the defendant's case and Epps' case, because – at its core – the defendant cannot show *any* discriminatory purpose, a prerequisite to a legal finding of selective prosecution. He is not a member of a protected class for the narrow purposes of this motion, and he has simply not demonstrated that the government singled him out for prosecution owing to his membership in any identifiable group. He has not alleged, nor could he, which group is being unfairly or improperly targeted by the government. On this prong alone, his motion fails.

## CONCLUSION

The United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the arguments when the relevant issues arise during trial.

> Respectfully submitted,
>
> MATTHEW M. GRAVES
> United States Attorney
> DC Bar No. 481052
>
> By:     */s/ Gregory Rosen*

---

RCL, ECF No. 84 (same); *United States v. Thomas Hamner*, 21-cr-689-ABJ, ECF No. 28 (same).

[6] Evidence of mitigation also factors into a prosecutor's decision to extend a plea. "Epps remained on restricted Capitol grounds for a little over a half hour longer [after the sign push]. Video evidence shows that during his time on Capitol grounds—indeed, both before and after his participation in the sign push described above—Epps made at least five attempts to deescalate conflicts between other rioters and police officers and prevent rioters on the West Plaza from attacking police along their defensive line." *See United States v. Ray Epps*, 23-cr-321-JEB, ECF No. 5.

GREGORY ROSEN<br>
VA Bar No. 82584<br>
ALEXANDRA FOSTER<br>
D.C. Bar No. 470096<br>
Assistant United States Attorneys<br>
United States Attorney's Office<br>
601 D Street, N.W.<br>
Washington, D.C. 20530<br>
Phone: (202) 252-6932<br>
Email: Gregory.rosen@usdoj.gov

13