UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>*v.* )<br>)<br>JONATHAN JOSEPH COPELAND )<br>)<br>**Defendant.** ) | Case No. 1:23-cr-0224 (DLF) |

**DEFENDANT'S BRIEF AMENDED BY ERRATA RE: GOVERNMENT'S IMPROPER JENCKS AND ORAL DEMAND TO STRIKE WITNESS AT TRIAL**

Comes now the Defendant, JONATHAN JOSEPH COPELAND, by and through undersigned counsel, and pursuant to the Court's order on May 1, 2024 provides this brief. He respectfully moves this Court to deny the government's improper demand for the Court to strike Defense witness Steven Hill's testimony on April 30, 2024; and asks the Court to admonish the prosecution for choreographing a specious claim that the Defense denied them materials under Jencks. Mr. Copeland supports his requests as follows:

I. **INTRODUCTION**.

Prior to the Pretrial conference the Defense provided the government with Mr. Copeland's expected exhibit listing. The Defense used the platform "Dropbox" to provide the government with all documents and pictures it expected to use as exhibits. At the Pre-Trial conference on April 23, 2024, and again before trial started on April 29, 2024, the Court advised the Defense for clarity that Mr. Hill would not be allowed to testify as an expert, and that he would be summarizing video and case materials as he had done in other trials.

The Defense requested that the Government provide upload permission access to a folder on its sharing platform in USAfx so that the Defense could share its expected video exhibits. The

government inexplicably would not do this, even after additional verbal requests and where in other cases that has been the standard afforded by the government to the Defense. On April 29, 2024 the government advised the Court that its case would run through the end of the day on April 30, 2024.  It did not tell the Court that it would not be calling witness Commander Bagshaw. The government commented to the Court for the purpose of creating prejudice against the Defendant that it had not been provided with the Defense's videos that were on the exhibit list. The Defense told the government that at its convenience the Defense would assist the government with copying the specific folders from a flash drive onto its computer. The government deliberately made no effort to copy the video folder, even though it had a paralegal at its table. Subsequently the government again projected to the court that the Defense had not provided its video exhibits even though it had acknowledged before trial that it had no objections because it was able to identify all videos listed on the Defendant's exhibit list.

At 8:08 p.m. on April 29, 2024, the government emailed the Defense counsel, and without giving any reason wrote that it believed that Defense witness Mr. Hill would be able to start his testimony on April 30, 2024. In that email, the government stated that it had not received "reverse Jencks" and demanded "all electronic communications (including but not limited to text messages, e-mails etc.), other reports, or other documents that relate to the subject matter of Mr. Hill's testimony." As a courtesy, that night the Defense provided the government all previous trial testimony transcripts (i.e. statements) for Mr. Hill in previous January 6th cases, although the government already had these transcripts from a recent case , where the digital version should have resided in the government's digital data banks.

On April 30, 2024 before Mr. Hill's testimony as a summary witness investigator, Mr. Mirabelli approached the defense table and demanded the Defense provide every internal email,

text, note that involved Mr. Hill. Before breaking for lunch, Mr. Mirabelli even demanded yellow stickies and notes passed among the defense team at trial during government witness testimony. He also demanded all private notes that Mr. Hill made to himself for the case, even if not shared with counsel. Defense counsel advised Mr. Mirabelli that Mr. Hill had not created any report for the Defense, and his communications related to the development of trial strategy and attorney work product as to what questions to ask government witnesses and what exhibits to use. Mr. Hill said he needed at least an hour to find his own private notes. Mr. Mirabelli threatened that he was going to make a motion to the Court that the Defense had not complied with Jencks. Counsel advised Mr. Mirabelli to proceed and that he should make a motion.

On the morning of April 30, 2024, the government advised the Court about what it apparently knew the day prior and had failed to tell the Defense: that it would not be calling Commander Jason Bagshaw as a witness. AUSA Foster when asked would not directly admit to the undersigned prior to the start of trial on April 30, 2024 that the government was not calling Bagshaw.

Due to the two plus hours that were no longer required for Bagshaw's direct and cross-exams, and despite the work the Defense had put into finalizing what it expected to be a lengthy cross-exam that would go until the end of the Court's schedule for the day (hard stop scheduled for 4:00 p. m.), the Defense opened its case in chief with Mr. Hill's direct testimony a few minutes after 2:00 p.m. Upon beginning cross-exam, the government then made an oral motion to strike all of Mr. Hill's testimony because it alleged that the Defense violated the Jencks Act by not providing materials to the government. After Defense counsel said that she had provided transcripts and had even offered to let the government look at the yellow stickies (refused by Mr. Mirabelli), and that she was not aware of anything that required disclosure to the government (everything was Defense strategy and work product), the Court sua sponte asked that the Defense send an email to chambers

3

that evening for the judge to review the communications in camera. The government did not refer to Rule 26.2 or request a Court determination prior to beginning cross-exam.

Mr. Hill reviewed the potential Defense video exhibits, as well as the government's videos prior to trial. In his investigator role, he made suggestions as to which to use for cross-exam and which ones he might be asked to address to highlight what the videos showed. As stated before trial, his testimony was as a summary witness where he addressed documents and videos, and what they showed or stated. He had not interviewed any trial witnesses. He did not interview or provide any notes about statements by Mr. Copeland. He did not submit any report on any trial witnesses' testimony before or during trial. He did advise the Defense of the multiple uses of illegitimate, excessive force used by Commander Bagshaw on January 6, 2021. To the extent it could remotely be called a "report," (which it was not) he suggested certain videos to use for cross-exam of Bagshaw and to show as false any testimony Bagshaw might make that the large billboard/sign caused the police line to collapse. As a summary witness, Mr. Hill suggested he could address the same for impeachment. He did not make any "statements" that could remotely be used for impeachment of him. His communications involved input to attorney work product, with suggestions for cross-exam focused on witness impeachment. His efforts were all in support of work product, witness impeachment, and defense strategy - and do not fall under Rule 26.2 statements that must be provided to the government.

Even up until the end of trial, the government did not provide access to USAfx for the defense to provide video exhibits. The government left the court without ever directing its paralegal to take up the Defense's verbal offer to copy the Defense video folders. Such deliberate non-action if not obstruction makes any complaint by the government about exhibits a staged show.

## II.   LEGAL STANDARD.

A.  The **Jencks Act** refers to **18 U.S.C. § 3500**, "Demands for production of statements and reports of witnesses." The § 3500 law applies only to the government and states:

**(a)**  In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena,(sic) discovery, or inspection **until said witness has testified on direct examination in the trial** of the case.

**(b)**  After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to **produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified**. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

**(c)**  If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

**(d)**  If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

**(e)**  **The term "statement"**, as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

**(1)**  a written statement made by said witness and signed or otherwise adopted or approved by him;

**(2)**  a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

**(3)**  a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

5

Across the circuits, the Jencks Act is seen as integral to a fair trial when implemented as written. The 5th Circuit found the purpose of the Jencks Act is to reinforce credibility of the criminal justice process by requiring the prosecution to furnish statements of any witness it calls so that the defense can conduct its cross-examination in light of all facts known to prosecution and so that defense is assured that witness has made no secret contrary statements in past. *United States v. Head, 586 F.2d 508, 1978 U.S. App. LEXIS 6931 (5th Cir. 1978)*. Likewise, the 9th Circuit said the Act is to make any existing prior statements made by government witness equally available to defense and prosecution; there is no further requirement that government create such discoverable statements. *United States v. Bernard, 625 F.2d 854, 1980 U.S. App. LEXIS 15290 (9th Cir. 1980)*. The 11th Circuit said the Act's purpose is to allow the defendant materials for impeachment and to protect government files from unwarranted disclosure. *United States v. Pepe, 747 F.2d 632, 17 Fed. R. Evid. Serv. (CBC) 412, 1984 U.S. App. LEXIS 16406 (11th Cir. 1984)*. Similarly, this Circuit said the purpose of the Jencks Act is to protect government files from unwarranted disclosure. [Saunders v. United States, 316 F.2d 346, 114 U.S. App. D.C. 345, 1963 U.S. App. LEXIS 6276 (D.C. Cir.)](), app. after remand, [323 F.2d 628, 116 U.S. App. D.C. 326, 1963 U.S. App. LEXIS 4191 (D.C. Cir. 1963)]().

   **B.  Fed. R. Crim. P. 26.2  - Producing a Witness's Statement.** The Rule, which applies to both the defense and government, specifies a clear process and criteria for materials, and states:

   **(a) MOTION TO PRODUCE**. After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.
   **(b) PRODUCING THE ENTIRE STATEMENT**. If the entire statement relates to the subject matter of the witness's testimony, the court must order that the statement be delivered to the moving party.
   **(c) PRODUCING A REDACTED STATEMENT**. If the party who called the witness claims that the statement contains information that is privileged or does not relate to the subject matter of the witness's testimony, the court must inspect the statement in camera. After

excising any privileged or unrelated portions, the court must order delivery of the redacted statement to the moving party. If the defendant objects to an excision, the court must preserve the entire statement with the excised portion indicated, under seal, as part of the record.

        **(d) RECESS TO EXAMINE A STATEMENT**. The court may recess the proceedings to allow time for a party to examine the statement and prepare for its use.

        **(e) SANCTION FOR FAILURE TO PRODUCE OR DELIVER A STATEMENT**. If the party who called the witness disobeys an order to produce or deliver a statement, the court must strike the witness's testimony from the record. If an attorney for the government disobeys the order, the court must declare a mistrial if justice so requires.

        **(f) "STATEMENT" DEFINED**. As used in this rule, a witness's "statement" means:

        (1) a written statement that the witness makes and signs, or otherwise adopts or approves;

        (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a recording; or

        (3) the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement.

## III.    ARGUMENT.

"The dual aim of our criminal justice system is 'that guilt shall not escape or innocence suffer,'" *United States v. Nobles*, 422 U.S. 225, 230 (1975)(quoting *Berger* v. *United States*, 295 U.S. 78, 88 (1935). The Jencks Act and Federal Rule of Criminal Procedure 26.2 are part of that philosophy where trials should be fair, with no side following a win at all costs strategy.

There is a distinction between discovery in criminal and civil cases. Criminal case discovery is limited, where a criminal defendant "[has] no general right to obtain the statements of the Government's witnesses <u>*before they have testified*</u>. Fed. Rules Crim. Proc. 16(a)(2), 26.2. In a civil case, by contrast, a party is entitled as a general matter to discovery of any information sought if it appears 'reasonably calculated to lead to the discovery of admissible evidence.'" *Degen v. United States*, 517 U.S. 820, 825-26 (1996)(Emphasis added). This does not negate the government's requirement to adhere to *Brady* by providing exculpatory and impeachment evidence.

The entire matter here arises from the unreasonable attempt by the government to invade Defense privilege, work product, and strategy, and then to ignore Rule 26.2 and do some foot stomping in the court room demanding a result (strike testimony) that it is not entitled to.

> The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case. *United States v. Nobles*, 422 U.S. 225, 238 (1975).  see FED.R.CRIM.P. 26.2 Advisory Committee note (1979) (Rule 'place[s] in the criminal rules the substance of' the Jencks Act). Rule 26.2(a) provides that **after a witness has testified, the opposing party may move the court to order the party** who called the witness to turn over 'any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

*U.S. v. Stanfield*, 360 F.3d 1346, 1351 (D.C. Cir. 2004)

Prior to cross exam of Mr. Hill, in its staged exhibition that disregarded Rule 26.2 and all caselaw, the government demanded that the Court strike Mr. Hill's testimony because AUSA Mirabelli had demanded "reverse Jencks" and the Defense had not provided it. The Defense told AUSA Mirabelli that it did not have anything that did not fall under defense strategy or attorney work product, and that nothing Mr. Hill investigated involved a written product about his testimony. Because the government ignored the proper procedure and created its own with demands not supported by Rule 26.2 or Jencks law, the Court should immediately deny the government's demand to strike the testimony. The government's demand was illegitimate and incompetent legally.

**A.  <u>There is No Such Thing as "Reverse Jencks" - Federal Rule of Criminal Procedure 26.2 is a near Equivalent that Applies to Both the Government and Defense</u>.**

The process in the Jencks Act is clear. After direct testimony by a government witness the defense may ask the Court to order the government to produce prior **statements** - as defined in the Act. After the defense makes a motion for government production of statements, if the government objects, the court can order the government to provide any material in camera so the Court can

8

decide if the material should be produced to the defense. The use of "reverse Jencks" is a misnomer. *18 USCS § 3500* is a narrowly structured design to regularize and limit access of the accused; discovery provisions are for the benefit of the defendant and **contain no suggestion of reciprocal discovery**. *Middleton v. United States, 401 A.2d 109, 1979 D.C. App. LEXIS 393 (D.C. 1979)*.

This Circuit said the Act removed some of the subjective decisions that used a balancing test to determine whether the government had to produce material. The law works so that "once the court determines that material sought is a 'statement' of a government witness, as defined by *18 USCS § 3500(e)*, and is relevant to trial, it need not engage in weighing these factors against governmental privilege of secrecy, and this balance is for government to strike. . . ." *Reed v. United States, 379 A.2d 1181, 1977 D.C. App. LEXIS 277 (D.C. 1977)*.

The 10th Circuit wrote that the Jencks Act "indicates clearly studied congressional purpose to limit the right of a defendant in a criminal prosecution to production from files of the government of statements as defined in Section 3500 to be used for impeachment purposes only." *Johnson v. United States, 269 F.2d 72, 1959 U.S. App. LEXIS 3488 (10th Cir. 1959)*. The 5th and 6th Circuits generally joined the "Jencks impeachment purpose" view.

The Defense has no requirement under Jenks. It may have a production requirement under Fed R. Crim P. 26.2. The defense is not required to provide anything not related to prior statements made or adopted by the defense witness. Or potentially an investigator's report might be required production prior to cross-examination if the report resulted from witness interviews before trial and the investigator testifies about statements a prosecution witness made previously. *United States v. Nobles* presented such an issue. Unlike this case, the investigator in *Nobles* conducted interviews and testified about what was said. The government wanted the report to determine

whether it contained evidence with which to impeach the investigator's testimony and lead the jury to not give it weight. *United States v. Nobles*, 422 U.S. 225, 231-32 (1975).

A challenging point is whether the person interviewed ever acknowledged or adopted the alleged statements. The government usually provides Form 302s for the pretrial witness preparation sessions. However, caselaw is consistent and matches Rule 26.2 that the witness must acknowledge, sign, or adopt the statements in the Form 302 for that material to be used. The defense (or government) witness must first testify, and the opposing party must ask the court to order production if it believes there are relevant statements that were not yet provided. The government never asked this Court to order production. Instead, the government believed it had authority to make a demand and then stomp its feet when told to bring a motion before the Court. But the government's motion was not to have the Court order production. The government skipped that step and immediately demanded that Mr. Hill's testimony be stricken.

Rule 26.2 does not authorize the government to invade defense materials, work product, and case strategy as was attempted here by the AUSA. These demands were reminiscent of old British general warrants. The government was on a fishing expedition. The Court cannot order earlier production than after direct testimony by the witness. It appears in this District that for January 6th cases, given its witnesses such as USSS Inspector Hawa who testify repeatedly where many inches thick transcripts result, that the volume of the government witnesses' prior related testimony has encouraged the government to provide the materials before direct exam. The reason appears to preclude a delay during trial if the judge must review the material and then order presentment to the defense. The defense must be given reasonable time to review the materials.

Whether Rule 26.2 is used by the government or defense, the party *must request* the

material through the judge after the witness testifies if the opposing party has not already provided it - and it exists. For the government's witnesses, the existence of prior testimony is mostly a given.

If a defense counsel states that he/she believes communications or reports fall under attorney work product and defense strategy, the procedure is for the Court to order those be provided in camera. What "those" might be in this case from the government view, as verbally expressed by Mr. Mirabelli, was for the Defense to hand over every private note that Mr. Hill made, every communication transmitted via all types media, and every defense note in any way related to Mr. Hills' testimony even if Mr. Hill was not party to the note making by counsel. The government was way out of bounds. There is no support from either the Jencks Act or Rule 26.2 to justify the government's outrageous attempt to invade the Defense's work products and strategy.

The Court cannot order materials be provided before witness testimony, even as a matter of trial efficiency. As the Third Circuit explained in *United States v. Murphy,* 569 F.2d 771 (3d Cir.), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807 (1978):

> The blunt command of the statute together with the unequivocal legislative history has led to unbroken precedent in the Courts of Appeals denying to district courts the power to compel production of the statements of government witnesses until conclusion of direct examination at the trial." *Id.* at 773. In the instant case, the Government has indicated it will disclose any Jencks Act material the day before the witness testifies, Government Brief at 61 n. 30, although it is not required to do so.

*U.S. v. Eisenberg*, 773 F. Supp. 662, 683 (D.N.J. 1991)

Because there was no material assessed by the defense to fall under Rule 26.2 requirements for providing those to the government, and because the government did not ask the Court to order the defense to provide such statements as the government believed relevant to what Mr. Hill had testified to on direct exam, the government bypassed the required Rule 26.2 process. The Defense provided the Court in camera Defense communications with Mr. Hill for its review. But because

the government did not raise a proper motion or follow any legitimate process, Mr. Hill's testimony cannot and should not be stricken.  Given a majority of circuit agreement that the Rule is to allow material for impeachment purposes of the opposing party's witness, nothing in Mr. Hill's testimony was related to the broad swath of invasive, fishing expedition communications the government demanded. Mr. Hill's direct exam testimony did not intimate any prior statement by him existed, and could then apply to "impeachment" against him. The government never limited its demand to statements - it demanded all Defense communications and even Mr. Hill's private notes that did not include interviews of anyone, with none ever given to the Defense. Mr. Hill gave advice on what videos the defense should use, and what questions to ask then Lieutenant Bagshaw. The government removed Bagshaw from its witness list on April 30, 2024. Defense strategy material discussed with Mr. Hill was never used at trial, included no statements by Mr. Hill, and was largely about Bagshaw.

Witness Bagshaw never testified since he was taken off the government's witness list on April 30,3024. None of Mr. Hill's work regarding Bagshaw was in his direct exam testimony. Because nothing qualifies as a statement by Mr. Hill that could be used for impeachment of his testimony on direct, where work product and strategy are all that were involved, and because the government bypassed the procedures to request any material and for time to review it based on what the Court may have permitted to be released after in camera review, then the government's oral motion from April 30, 2024 must be denied.

### B. Mr. Hill's Investigative Inputs Were Part of Defense Strategy Preparations and Contributed to Defense Attorney Work Product for Impeachment Purposes.

Clearly while it was a defense strategy document that included suggestions for cross examining a government witness, the defense provided "Recommended Bagshaw Questions 20240428 - SKH.docx" among the other documents it provided to the Court for in camera review,

even though the material is obviously outside the Rule 26.2 requirements for statements and the process. No defense documents had anything to do with Mr. Hill adopting any statement from his alleged words, such as from interview notes by counsel in preparation for his testimony. The Defense counsel assessed what he said was on video and Defense document exhibits. Neither Mr. Hill nor counsel developed any trial preparation summary where Mr. Hill affirmed his prior statements. Mr. Hill made investigation recommendations for cross examining government witnesses, with the majority being about Commander Bagshaw. Ironically, even though it seems apparent that the government knew that Commander Bagshaw would not be testifying the night before he was scheduled to, the government led the Defense to waste its time preparing cross-examination of Bagshaw. In an email for example Mr. Hill recommends documents to be used for the cross-exam of Bagshaw, and suggest that he also could be asked about the documents. The trial testimony shows that Mr. Hill was not asked, and the majority of documents were not admitted into evidence.

Because the government did not ask for or wait for an in camera review process before conducting its cross examination, its motion to strike testimony should be immediately quashed. The government never asked the Court to decide what the government might be allowed to receive. It did not state that it expected to need any time to review any documents. Because striking Mr. Hill's testimony would unfairly prejudice the Defendant when the Court did not coach the government to follow the process under Rule 26.2, the Court must deny the government's request to strike.

### C. Mr. Hill's Investigative Communications Fell Within Attorney Work Product as to Videos that Might be Used For Summary by the Defendant or Mr. Hill.

13

There is no question that none of the documents involving Mr. Hill meet the requirements of a statement under Rule 26.2, and where nothing was related to his direct exam testimony. Because of this, the Court must deny the government's demand to strike his testimony.

**D.  The Government Uses a Double Standard Where If What it Demanded Were Legitimate Without Using the Rule's Process, It Would Then be in Violation of 26.2**.

The government has no right and no authority to demand any material prior to a defense witness's testimony. The government interviewed its witnesses again during the week before trial. Under the government's theory, because it provided no 302's regardless of whether those are witness statements, then the Court would be required to declare a mistrial, with charges dismissed with prejudice under the Jencks Act and Rule 26.2.  Additionally, Inspector Tran investigated for over two years, and no notes of hers were provided to the Defense. And the government did not provide all Hawa testimony from her fifty plus trial testimonies. The Defense did not and is not requesting these but under the Government's standards where the Rule's process is irrelevant, the Defense can now after the fact without following Jencks Act or Rule 26.2 process request that the Court declare a mistrial and dismiss all charges with prejudice.

**E.  If the Standard the Government Demands of the Defense is Reciprocal, the Court Should Declare a Mistrial with All Charges Dismissed With Prejudice**.

No Form 302s were provided to the Defense for witness reinterviews conducted by the government the week prior to trial. AUSA Foster travelled from California to Washington, D.C. a week before trial for purposes that included these witness re-interviews. The witnesses had been interviewed prior to the originally scheduled February 2024 trial.

Ms. Hawa's voluminous prior testimony was delayed by the government in provision to the Defense until approximately a week before trial, despite the Pretrial Scheduling Order. Even so, at trial, she said she had testified at least fifty times. The transcripts provided by the government

only included about 32 prior trial testimonies that fall under Jencks and Rule 26.2. If the government is allowed to create its own process where the Court orders Mr. Hill's testimony stricken despite Rule 26.2, then outside the process of Rule 26.2 the Defense requests the Court declare a mistrial, with charges dismissed with prejudice and double jeopardy having attached.

## IV.   CONCLUSION.

There cannot be standards under Rule 26.2 that the government considers only applicable to the Defense while the government ignores those requirements for itself. It remains unclear if the government ever read Rule 26.2 given its misapplication of the Jencks Act to the Defense. Ignorance of the law is no excuse for the government. Nonetheless, the government's demands for all Defense communications with Mr. Hill, and all his private notes, are rogue and outside Rule 26.2 and caselaw. The government did not legitimately ask for the materials and instead demanded that Mr. Hill's testimony be stricken. The government never requested an in camera review and Court decision regarding its fishing expedition. The government was adamant without following process that the Court should decide then and there to strike Mr. Hill's testimony. Because of this, where no decision process was requested or followed as required by Rule 26.2, the motion to strike was illegitimate and must be denied.

WHEREFOR, given good cause and using the correct legal standard as dictated by Rule 26.2, the Court should issue a minute order that denies the government's illegitimate demand to strike Mr. Hill's testimony, and admonish the government for misleading the Court and failing to follow the law and Federal Rules while setting up the appearance of a Defense violation. If the Court orders Mr. Hill's testimony stricken when no process as required by Rule 26.2 was requested or followed, then under this same lack of standards the Court should grant this defense request to declare a mistrial, with charges dismissed with prejudice after double jeopardy attached.

Amended by errata May 4, 2024
Dated May 3, 2024                                             Respectfully submitted,


_____                                        /s/ *Carolyn Stewart*
ANTHONY F. SABATINI                                           Carolyn A. Stewart
FL Bar No. 1018163                                            D.D.C. Bar No. FL-0098
anthony@sabatinilegal.com                                     Stewart Country Law PA
SABATINI LAW FIRM, P.A.                                       1204 Swilley Rd.
411 N DONNELLY ST, STE #313                                   Plant City, FL 33567
MOUNT DORA, FL 32757                                          Tel: (813) 659-5178
T: (352)-455-2928                                             Email: Carolstewart_esq@protonmail.com
Attorney for Defendant                                        Attorney for Defendant


## CERTIFICATE OF SERVICE

I hereby certify on the 4th day of May 2024, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ *Carolyn A. Stewart*
Carolyn A. Stewart, Esq.