UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| *v.* ) | Case No. 1:23-cr-0224 (DLF) |
| ) | |
| JONATHAN JOSEPH COPELAND ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S POST VERDICT RULE 29 MOTION FOR A JUDGMENT OF ACQUITTAL, WITH INCORPORATED MEMORANDUM OF LAW**

Defendant JONATHAN COPELAND, by and through undersigned counsel, pursuant to the Federal Rules of Criminal Procedure Rule 29 submits this Motion with Memorandum of Law for a Judgment of Acquittal now after the findings because of Brady violations by the government, due process violations, misapplication of the statutes, and because the prosecution failed to present sufficient proof from which any rational juror could conclude beyond a reasonable doubt that Mr. Copeland is guilty for every element of the crime for each and every count as held by the Court. Mr. Copeland requests a judgement of acquittal for Counts 1, 2, 3, 4, 5, 6, 8, and 9 in the Indictment at ECF No. 29 and provides the following in support:

**I.      FACTS**.

The Court denied the pre-verdict Rule 29 motion on May 8, 2024. Also, just prior to issuing its findings on May 8, 2024, the Court announced the elements of the crimes. Within the 14-day time requirement of the guilty findings, Mr. Copeland requested an extension of time to file this Rule 29 Post Verdict Motion. ECF No. 96. The Court by minute Order on May 20, 2024, approved an expansion of time where this Motion is due by June 21, 2021.

## II.    LEGAL STANDARD.

### A. Rule 29, Fed R. of Crim P. Allows a Judgment of Acquittal Upon a Motion:

> (c) Motion After Jury Verdict or Discharge.
> (1) Time for a Motion. A defendant may move for a judgment of acquittal , or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.
> (2) Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and return an acquittal.
> . . .

18 APPENDIX U.S.C. § 29

A court can grant such a motion only if the evidence, considered "in the light most favorable to the government," is not "sufficient to permit a rational trier of fact to find all of the essential elements of the crime beyond a reasonable doubt." *United States v. Kayode*, 254 F.3d 204, 212 (D.C. Cir. 2001). See *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). While the Court accepted a Rule 29 Motion after the government closed its case, and denied the motion prior to issuing the guilty verdict, an argument could be made that Rule 29 does not mention bench trials where the judge is the trier of fact.

However, even outside of a Rule 29 motion, an alternative that is asserted here, if the government argues that Rule 29 post-findings do not apply, is a motion for reconsideration because findings of guilt are not final orders that divest the court of jurisdiction or permit an appeal. See *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 1488 (1989) (explaining that in criminal cases, there is usually no final appealable order "until after conviction and imposition of sentence"). And unlike an acquittal, a finding of guilt does not "end the case" as to the count. Cf. *Smith v. Massachusetts*, 543 U.S. 462, 471 (2005). Under the long-settled rule, then, district courts have authority to reconsider findings of guilt. Cf. *United States v. Mendoza*, 390 F. Supp. 2d 925, 928 (N.D. Cal. 2005) (case in which the district court "reconsidered its guilty verdict, vacated its

finding of guilty, and dismissed the indictment"), rev'd on other grounds, 232 Fed. Appx. 675 (9th Cir. 2007).

    **B. Fed. R. Crim P. Rule 29 States That a Court May Grant a Judgment of Acquittal When the Prosecution Fails to Prove All Elements of a Crime Charged**.

    **1. The prosecution must state all elements of the crime with specificity and then prove beyond a reasonable doubt each element of every crime charged**.

Evidence is insufficient to sustain a conviction when it goes no further than to "raise a question [of guilt] in a reasonable man's mind" or "create suspicion." *Cooper v. United States*, 218 F.2d 39, 42 (D.C. Cir. 1954). Even when evidence raises a "grave suspicion" in the reasonable juror's mind as to guilt, it is insufficient to support a verdict, unless proof of guilt beyond "a reasonable doubt" is possible on the evidence. *Scott v. United States*, 232 F.2d 362, 364 (D.C. Cir. 1956). In other words, "*some evidence of guilt*" is not enough. *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015) (emphasis added).

    **2. In considering a Rule 29 motion this Court must grant it if the jury engaged in speculation.**

"The court may not permit a jury to render a guilty verdict based on 'ambiguous evidence' from the government, which encourages the jury to 'engage in speculation.'" *Bailey v. United States*, 416 F.2d 1110, 1116 (D.C. Cir. 1969).

    **3. Restated, the Court must grant a motion for judgment of acquittal if a "reasonable juror must necessarily have had a reasonable doubt as to the defendant[']s guilt."**

See *United States v. Weisz*, 718 F.2d at 437 (citing *United States v. Singleton*, 702 F.2d 1159, 1162-63 (D.C. Cir. 1983)). See also *United States v. Reese*, 561 F.2d 894, 898 (D.C. Cir. 1977); *Curley v. United States*, 160 F.2d 229, 232-33 (D.C. Cir. 1947) ("[I]f there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion

3

[for judgment of acquittal] must be granted."), cert denied, 331 U.S. 837 (1947). *United States v. Jabr*, 2019 U.S. Dist. LEXIS 238718, *9-10, 2019 WL 13110682 (D.D.C., May 16, 2019).

**4. This Court must give the government the benefit of only "legitimate inferences."**

*Singleton*, 702 F.2d at 1163). A court should not speculate or bend statutes where the government invents guilt from innocence.

> Moreover, Rule 29 does not require the Court to view the evidence through dirty windowpanes and assume that evidence which otherwise can be explained as equally innocent must be evidence of guilt. See *Curley*, 160 F.2d at 233 (if "a reasonable mind must be in balance as between guilt and innocence, a verdict of guilt cannot be sustained").

United States v. Recognition Equip., Inc., 725 F. Supp. 587, 588 (D.D.C. 1989).

**5. If a reasonable trier of fact would have a reasonable doubt as to the existence of any of the essential elements of the crime, the Court must acquit**.

*United States v. Durant*, 208 U.S. App. D.C. 374, 648 F.2d 747 (D.C. Cir. 1981); see also United States v. Foster, 251 U.S. App. D.C. 272, 783 F.2d 1087, 1088 (D.C. Cir. 1986).

**C. <u>Intent Must be Proven for Every Crime Except Those for Strict Liability</u>**.

The U.S. Supreme Court made this clear:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory 'But I didn't mean to,' and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution.

*Morissette v. United States*, 342 U.S. 246, 250-51 (1952).

### III. ARGUMENT.

Mr. Copeland should be acquitted for Counts 1, 2, 3, 4, 5, 6, 8, and 9 in the Indictment at ECF No. 29 because of Brady violations by the government, due process violations, misapplication of the statutes, and because the prosecution failed to present sufficient proof from which any rational juror could conclude beyond a reasonable doubt that Mr. Copeland was guilty for every element of the criminal elements for each count as held by the Court.

**A. The Government Committed Multiple Brady Violations that are Cause to Overturn the Conviction for Every Guilty Finding Because of the Unfair Prejudice Caused by the Omissions and Where the Court Would Have Instead Acquitted.**

*Brady v. Maryland*, 373 U.S. 83 (1963) held that government's withholding of evidence that is material to the determination of either guilt or punishment of a criminal defendant violates a defendant's constitutional right to due process. Prosecutors must disclose to the defense any material, exculpatory, potential impeachment, or favorable to the defense information in the government's possession, whether the information involves sentencing or the decision of guilt.

The Legal Standard for a *Brady* violation requires the Defendant to show reasonable probability that the undisclosed evidence would have produced a different verdict where:

> the evidence at issue was favorable to the accused, either because it is exculpatory or is impeaching; that the evidence was suppressed, willfully or inadvertently by the state; because the evidence was material, its suppression resulted in prejudice; and the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley*, 473 U.S. 667 (1985); *U.S. v. Agurs*, 427 U.S. 97 (1976); *Strickler v. Greene*, 527 U.S. 263 (1999).

In *Kyles v. Whitley*, the Supreme Court clarified four aspects of the test:

1. "Reasonable probability" is a question of whether the government's failure to disclose this information undermines confidence in the outcome of the trial.
2. "Reasonable probability" is not a sufficiency of evidence test and the defendant does not need to show that the evidence, barring any evidence undermined by the withheld

5

information, is inadequate to support a conviction. Rather, the defendant merely must show that the withheld information can reasonably be taken to put the whole case in a different light.
3. Failure to disclose information which has a reasonable probability of changing the outcome of the trial is inherently harmful, thus there is no need for a separate harmless error review.
4. All information not disclosed must be considered collectively, not item by item.

**1. The Government withheld evidence of the two men it knew had assaulted the AP reporter and unjustly accused Mr. Copeland**.

The government showed a video where its narration, particularly in closing argument, asserted that Mr. Copeland verbally and physically assaulted an AP reporter (Minchello).  Mr. Copeland truthfully testified that he did not assault or threaten the reporter, and that instead when he saw two men threatening the reporter, he pointed at them telling them to stop, and then told the reporter to not stay there because it was unsafe at the time. Mr. Copeland's testimony was sincere.

The government provided no video showing Mr. Copeland touch the reporter. The government presented no audio indicting any threat to the reporter from Mr. Copeland. <u>The government fabricated a narrative unsupported by evidence</u>. The Court for no evidentiary reason found Mr. Copeland's testimony not credible - based on the unjust and unfairly prejudicial presentation by the government about the reporter being pushed off a low wall that withheld the truth known to the government about the perpetrators. In its holding, the Court inserted facts not in evidence that were based solely on the government' false narrative and wrote: "But this testimony was not credible at all. The video plainly shows Mr. Copeland shoving the reporter and angrily shouting at the reporter to get out and go. Mr. Copeland's yelling and shoving and encouragement of other rioters pushing the reporter off the ledge together constitute direct infliction or threat of infliction of bodily harm." 23-cr-224 Transcript, May 8, 2024; 45:12-17.

The Court would not have made this finding of Mr. Copeland's non-credibility if the government had provided the defense and Court with the FBI Statement of Facts regarding defendant Benjamin Burlew. See 1:21-mj-00501 attached as Exhibit. In fact, according to the defense in Burlew (1:21-cr-00647-RDM) plea negotiations began around December 2023 where the attack on the reporter was not the charge pled to as guilty. The government was well aware that prior to the filing of Mr. Burlew's ECF No. 56 plea in May 2024 that the case contained exculpatory information about Mr. Copeland.

In addition to identifying Mr. Burlew and the other "unsub" who pushed the AP reporter, the Exhibit clears Mr. Copeland. It supports his testimony that two men (not Mr. Copeland) were threatening the reporter and pushed him. It supports Mr. Copeland's testimony that he only told the men to leave the reporter alone and for the reporter to get to safety away from the immediate area. <u>The Exhibit affidavit at pp. 10-12 shows that Mr. Copeland used words only where multiple videos and audio showed no push or threat by him</u>. The Exhibit, using clear video and BWC never provided to Mr. Copeland or the Court explicitly states that "unsub 7" and Burlew pushed the reporter off the wall. (Exhibit at 13-20). None of the full contextual video, BWC, or screenshots were provided to the Defense or the Court, with the exception of the image on page 12. The government added false narration to the page 12 image in Mr. Copeland's trial, and unjustly accused Mr. Copeland of encouraging others to commit assault and violence even though this Exhibit affidavit withheld by the government completely contradicts the false narrative provided in closing argument (which are not evidence). Nothing in the full, withheld complement of audio or video supported the government's narration that was taken as testimony.

The unjust taint by the government infected the Court's view of Mr. Copeland for every other charge and throughout the trial. It was only after the trial and verdict that the defense in

7

researching another issue stumbled upon the exhibit whether by accident or Divine providence. A review of the May 8 Transcript with all the guilt findings shows that in every instance, including pages 13, 28, 27, and 45, the Court considered Mr. Copeland's testimony "not credible" despite the honesty and sincerity he demonstrated in his testimony. His testimony, had it not been tainted by the government's withholding of Brady material, raised the appropriate reasonable doubt to both intent and alleged acts for every crime charged and convicted of in his trial.

The Court must overturn all findings of guilt because of the taint caused by the government's false narrative after it withheld Brady information that was material and exculpatory. The Court should not have speculated and found all Mr. Copeland's testimony not credible when it was the government that was not credible as the Brady information would have shown. The government took statements that could otherwise be explained s innocent and created a fiction to unjustly infer guilt. "The government is entitled to use a [video or picture] to tell a story, but not to inflate the narrative into a soap opera." *United States v. Wilson*, 160 F.3d 732, 745 (D.C. Cir. 1998). Apparently since the government was no charging the actual men it identified as committing the violence, it decided to pick Mr. Copeland as a fall guy for a crime he did not commit.

**2. The Government withheld evidence of the men it knew had intentionally pushed the metal sign and unjustly accused Mr. Copeland**.

Similar to the Brady violation supra, the government withheld video and statements that as evidence showed those who were deliberately pushing the Trump sign at police versus those such as Mr. Copeland who innocently touched the sign to keep it from crashing into the photojournalist tower and hitting bystanders on their heads.

In 1:21-cr-00689-ABJ ECF No. 59-1 Filed 01/11/24, Thomas Hamner admitted guilt in pushing the sign. (See Exhibit). He was in a position to steer the sign whereas Mr. Copeland was not - as shown by video. He admitted intent whereas Mr. Copeland had no criminal intent or

8

purpose. Mr. Copeland did not know anyone else that he viewed as keeping the sign from hitting people, and did not meet any of the elements of assault or aiding and abetting. Page 6 of the Hamner exhibit shows what a deliberate push looks like, which nothing Mr. Copeland did came close to resembling. Mr. Hamner was next to one of the wheels, which the government alleged could have hurt someone. The Court in being so biased against Mr. Copeland given all the government's withheld Brady material and false story-telling then inserted facts not in evidence that the sign caused a police officer to fall down - when video showed the officer was retrieving something he dropped on the ground.

Of note, Defendant Jose Padilla who (in blue jacket) is shown in the picture at the top of page 7 of the Hamner stipulated facts Exhibit, was acquitted in 1:21-cr-00214 based on Judge Bates finding that the government's evidence was ambiguous. Had the government not withheld the Hamner and Padilla Brady material (only found by more Divine providence after the verdict) and created unjust, unfair prejudice, this Court would have acquitted Mr. Copeland of any charge related to assault as did Judge Bates for Mr. Padilla.

In further violation of Mr. Copeland's due process, more Brady material related to the Trump sign was withheld. Long prior to the time of Mr. Copeland's trial the government had completed an investigation of a defendant named Knight. He was another person who allegedly deliberately pushed the sign and then assaulted police. However, image 13 in the Exhibit at 9 was not provided to Mr. Copeland or the Court. It shows the exculpatory material that no police were hit by the sign, and belies the Court's insertion of facts not in evidence that an office was knocked over. See Knight Exhibit.

Then there is the McHugh case material that in violation of Brady was withheld by the government. The government's sentencing memorandum for McHugh's case, 1:21-cr-00453-JDB

9

ECF No. 113 Filed 08/31/23 contains pictures not provided to Mr. Copeland or this Court. See McHugh Exhibit. First, image 20 on page 24 was never provided. It shows the benign upright sign by the Peace Monument. Exhibit McHugh Images 22 and 23 at page 25 that show McHugh holding the front of the sign as a wheel became caught in the bike rack were never provided to Mr. Copeland. These images show that no officers were hit by the sign. The images show McHugh on the opposite side of the sign from Mr. Copeland, in a position to effect steering, when Mr. Copeland could not see McHugh or steer anything. McHugh had previously used bear spray on police and was right up front with the sign.

Another Brady violation involved the videos and evidence involving Marshall Neefe, who pled guilty to multiple counts. See Case 21-CR-567-RCL-1. His Statement of the Offense admitted that he held and pushed the Trump sign in an assault where in paragraph 19 he said his "hands were on the large metal sign frame for at least 10 seconds, including while the sign made contact with the line of officers. NEEFE advanced forward with the sign and other rioters into the line of officers, and retreated from the line after officers drove him and others back with pepper spray." Yet despite there being no similar evidence against Mr. Copeland, the government read almost this same exact language as its non-evidentiary testimony in its closing argument. The Brady omission was knowing, as was the unjust accusation against Mr. Copeland. The government and court never identified a single officer hit by the sign. The evidence instead showed the police received order to pull the sign over the bike racks. Because of the unfair prejudice instilled against Mr. Copeland by the government by its deliberate Brady information withholdings, the Court discounted his testimony and relied on facts not in evidence. The Court again violated Mr. Copland's due process by writing without evidence that he committed assault in order to commit civil disorder assault.

Despite nothing in the withheld exhibits or those presented at Mr. Copeland's trial showing the metal part of the sign having sharp edges, the Court used the government's "narration testimony" in closing and from speculation to conclude that the sign had sharp edges. In questioning by the Court, Officer Beaver, could only speculate - over defense objections - that there may have been sharp edges. Although nothing was proven deadly or dangerous about the bulky sign, the Court assumed facts not in evidence to decide the sign was rammed at police by Mr. Copeland and that it was used as a deadly and dangerous weapon by him. The Court additionally added that Mr. Copeland was pepper sprayed by police when that story came only from the government in closing and no evidence. In fact, the government did not call MPD Capt. Jason Bagshaw because the evidence would have shown him assaulting elderly people on the ground with pepper spray in a clear and convincing exhibit of excessive, unjustified force. The Court also used the government's false story that the MPD line fell because of the sign. The sign was passed over the police line at 1:40 p.m. The MPD line retreated into the building at ~2:30 p.m. because police tear gas contaminated the police line. The evidence showed the police line still in place for about forty minutes after the police disassembled the frame of the sign. The Court drew a conclusion based on government closing argument and not all the evidence as shown in court during trial.

Mr. Copeland was convicted of assault because of withheld Brady material, speculation, and storytelling not based on any facts in evidence that created an unjust bias and unfair prejudice against him. Withheld material information showed those who were pushing and steering the sign as opposed to Mr. Copeland's efforts to keep it from hitting anyone. The Court unfairly discredited his testimony despite his honesty and sincerity. Instead it relied on a false narrative that would have been proven untrue had Mr. Copeland been provided the withheld Brady material. How many

11

others were intentionally acting, and how many others have been unjustly charged for merely touching the sign is an unknown because the government has not been forthcoming as it withheld material information. Because of the material evidence that was withheld that would have allowed for impeachment and would been exculpatory, and would have supported Mr. Copeland's honest testimony that the Court discounted, the Court must overturn all of his convictions.

As a further due process violation, the Court viewed the government's evidence prior to trial and before anything was entered into evidence. This was not due to Defense objections that required a Court viewing. The Court via email asked the government for every timestamp in every video showing the Trump sign back in January. The video was all designed to hide those who may have acted intentionally to commit assault as indicated in the exhibits. Regardless, the Court came to trial asking questions about sharp edges that were never alleged in the withheld Brady material, including other FBI affidavits, indictments, pictures, videos, and stipulated facts for bench trials. The withholding of Brady information was material and created unjust, unfair prejudice before Mr. Copeland entered the courtroom for trial.

The withholding of the Brady material also encouraged speculation and Court reliance on government false storytelling. Looked at as a whole, the government's Brady offenses were egregious and caused an unfair verdict that would never had been reached if the trial were fairly conducted with the withheld exculpatory and impeachment evidence - or had Mr. Copeland not been knowingly unjustly charged. Because of this, the Court must overturn the guilty convictions.

**B. <u>Mr. Copeland's Due Process Rights Were Violated and the Guilty Findings Must be Overturned.</u>**

**1. This Section Incorporates the Due Process Violation identified in Paragraph A above based on the Brady violations and the identified, associated issues with the trial proceedings**.

**2. Mr. Copeland's Due Process was violated as the Court used a draft trial transcript that was not provided to the defense for accuracy review**.

The caselaw holds that juries are not normally provided transcripts and are instructed to rely on their memories. In its elements of the crimes contained in the jury instructions at ECF No. 95 issued on May 8, 2024, the Court included no instruction regarding provision of a certified transcript, let alone a draft transcript for its use in deliberation.

It became clear by the second day of trial that the Court was receiving a draft transcript live feed from the Court reporter. The Court often took time to go back and review testimony. The Court did not offer a reduced rate live fed to Mr. Copeland, which it should have done. The live feed, as explained by other court reporters, does not go to Defense computers - it would only go to a specially provided tablet with no copying or save capability. Those same court reporters said the feed resets after each half day of the trial proceedings. Yet the judge was receiving the feed on a computer on the bench it appeared.

Despite the limitations that exist for the Defense for a live feed (no save or copy) the Court's verdict was replete with references to a non-existent transcript, i.e. one that was not allowed to be copied or saved during the live feed. The verdict Transcript from May 8, 2024 references transcript pages when the Court reporter refused to provide a certified transcript upon the defense's request for a 14-day transcript. As of this writing (30 days after acknowledgement of the transcript order) no certified transcript has been provided.

No mention was made prior to the judge's deliberations that a draft transcript would be used. The Defense was not afforded any opportunity to review whatever existed for the draft for errors, inaccuracies, and what was overlooked by the Court in deliberating. This appears to be a highly unusual violation of due process because caselaw requires a jury admonition of they are given a transcript of any type. "The district court 'enjoys broad discretion in responding to jury

13

questions generally, and especially in deciding whether to provide requested testimony either in written form, or as read by a court reporter.'" *United States v. Boyd*, 54 F.3d 868, 872 (D.C. Cir. 1995) (citations omitted). In this Circuit's caselaw, "the district court repeated its instruction that the jurors' recollections should control, determined the following day that the jury still wanted the transcripts, and additionally admonished that the jury remember that the transcripts represented only part of the evidence. In fact, the jury received the evidence in context because the transcripts sent to the jury included damaging cross-examination." *United States v. Wilson*, 160 F.3d 732, 748 (D.C. Cir. 1998).

Yet in the present case, the judge was not required to hear or re-read all the transcript evidence, and instead dismissed Mr. Copeland as non-credible. The judge issued no instruction as to her requirements to use a transcript, and never informed the Defense that a draft, unreviewed transcript would be used.

The Sixth Circuit has a defined jury admonition. Nonetheless, it held that "It is possible in a particular case that the choices made by a judge regarding whose testimony and/or what portions of testimony should be re-read may constitute an abuse of discretion, even in the face of such an instruction. But an instruction of the sort announced herein represents the minimum amount of protection a district court should provide if it grants a deliberating jury's request for testimony." *U.S. v. Rodgers*, 109 F.3d 1138, 1145 (6th Cir. 1997). Although related to admitting review of grand jury testimony, the issue is the same: "The district court therefore abused its discretion in failing to give an appropriate instruction with regard to the proper use of Clark's grand jury testimony. *See Rodgers,* 109 F.3d at 1141 (holding that a district court commits error when it does not give a cautionary instruction before permitting a deliberating jury to review testimony). *U.S. v. Smith*, 419 F.3d 521, 529 (6th Cir. 2005).

The Ninth Circuit has similar standards for the jury receipt of transcripts and testimony. "Consistent with the decision in *Richard* annotated below, the Ninth Circuit held that when the jury expresses an interest in hearing the testimony of a witness again, this should be done in open court with the parties present; the entire testimony should be re-played; and the court should admonish the jury not to place undue emphasis on the testimony of one witness." *United States v. Neuhoff*, 627 F.3d 1163 (9th Cir. 2010). In *United States v. Hernandez*, 27 F.3d 1403 (9th Cir. 1994), the Court held that counsel must be given an opportunity to review the transcript.

The use of the draft transcript without review by the Defense, without a limiting instruction or admonition, where use was not done in open court, not using a certified transcript entered on the record, and with the Defense denied a timely transcript for even this motion, Mr. Copeland's Due Process rights were violated. The Court must overturn his convictions because of this.

**C.  Because the Court Unconstitutionally Applied the Laws and Inserted Facts Not in Evidence After Relying on Government Closing Arguments the Convictions Must be Overturned.**

This section incorporates the arguments presented above. It adds that the elements of the crimes for assault, deadly and dangerous weapon use, and civil disorder were unconstitutional applications of the law. Indeed, the allegation for assault was that it was committed to commit the same assault for the Civil Disorder charge, where no link to any concurrent obstruction of commerce or a federal function, knowing action, or intent had to be show. In effect, the Civil Disorder charge was a tautology. Mr. Copeland is alleged to have committed assault to commit civil disorder assault. This makes the Civil Disorder charge unconstitutional s applied. Further, the Court ignored that the MPD were illegally on the US Capitol grounds. The MPD did not qualify as US or federal officers, they were not specifically, individually assisting any USCP officer, and they had no request from the USCP Board as required by statute to be present. Additionally, the

assault charge and trial evidence identified no officer assaulted by Mr. Copeland. The only testimony was mere speculation that an officer could have been hurt or hit by the sign. No evidence was presented of any such occurrence.

**D.  No Evidence was Presented at Trial That the FBI (Agent Tran) Had Any Authority to Investigate Section 1752 Restricted Grounds.**

Concurrent with a material Brady violation, the government failed to disclose that internal rules require that all Section 1752 violation investigations must be conducted by the US Secret Service. Despite all discovery requests, the government showed nothing to authorize FBI investigation of the charges. The investigation was therefore a violation and all charges must be dismissed. The Court lacks jurisdiction to make findings of guilt given an illegal investigation.

**IV.   CONCLUSION.**

Because of the issues raised in the argument above, the Court must overturn the convictions.

Wherefore, this Court should issue an order acquitting Mr. Copeland of all charges for which he was convicted.

Dated June 21, 2024                     Respectfully submitted,

                                        /s/ *Carolyn A. Stewart*
                                        Carolyn A. Stewart, D.D.C. Bar No. FL-0098
                                        Defense Attorney
                                        Stewart Country Law PA
                                        1204 Swilley Rd.
                                        Plant City, FL 33567
                                        Tel: (813) 659-5178
                                        Email: Carolstewart_esq@protonmail.com


**CERTIFICATE OF SERVICE**

I hereby certify on the 21st day of June 2024, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

                                        /s/ *Carolyn A. Stewart*
                                        Carolyn A. Stewart, Esq.