UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cr-00224-DLF |
| | ) | |
| JONATHAN JOSEPH COPELAND, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S NOTICE WITH INCORPORATED OBJECTIONS TO
THE DRAFT PRESENTENCE INVESTIGATION REPORT**

Defendant, JONATHAN JOSPEH COPELAND, by and through undersigned counsel, respectfully provides this Notice with listed objections to the draft Presentence Investigation Report (PSR) at (restricted) ECF No. 108, where he requests that if the parties cannot agree to resolution prior to Probation Services' filing of the final PSR, that Probation Services include the objections in the final PSR, and for the Court to decide on the objections during the opening segment of his sentencing hearing on November 22, 2024. Mr. Copeland supports his request and objections as follows:

**I.  BACKGROUND**.

On May 8, 2024, the Defendant was found guilty by bench trial of Counts One through Six, Eight, and Nine of the Indictment. He was found not guilty of Count Seven.

On June 21, 2024, Mr. Copeland filed Rule 29 and Rule 33 Motions, to include clear allegations of Brady violations by the government in its failure to disclose exculpatory video and convictions showing those responsible for assaulting a journalist that this Court convicted Mr. Copeland of based on false government narrative during trial. ECF No's 97-98. The PSR completely ignored these filings.

Without legal justification under the Federal Rules of Criminal Procedure, the DOJ provided ex parte input that it termed "evidence proven at trial" to influence the PSR, where the Probation Services Agency admitted in Item 11 of the PSR that it used the DOJ's biased injection.

Based on the Court's 10/15/2024 Minute Order, this Notice is timely filed in response to the draft PSR at ECF No. 108 that was filed on September 30, 2024. Mr. Copeland asserts that the draft PSR contains the material errors and points of contention which he objects to herein.

## II. <u>MATERIAL ERRORS AND POINTS at ISSUE IN ECF No. 108 - DRAFT PSR</u>:

### A. Part A of the Draft PSR: THE OFFENSE

**1.** The Draft PSR's Paragraph 12 incorrectly states that:

> The US Capitol Building and its surrounding grounds were closed to visitors on January 6, 2021, and a restricted perimeter had been established around its grounds in anticipation of the Vice President's visit and the certification of the 2020 election.

There was mere speculation by government witnesses - with no credible evidence - that anything related to the closure of the west side of the US Capitol was because of the visit of a United States Secret Service (USSS) protectee. The evidence showed the grounds were colloquially closed for stage construction, (D101) where the United States Capitol Police (USCP) acted alone in setting barriers and signs. USCP and USSS witness testimony consisted or hearsay and speculation of what might have happened in designating the closed area, even though no USSS agents were assigned to any protective detail prior to January 4, 2021 and the government provided no meeting minutes or attendees to support any claim the grounds were more than closed for stage construction and to preclude First Amendment protests in the west lawn public forum. The evidence showed that rallies were permitted and that demonstrators were expected. The evidence showed that VP Pence was never expected to go outside, and that no USSS were involved with

anything outdoors, even though they are the only agency with protection responsibility and may not delegate that.

   2.  The Draft PSR's paragraph 13 asserts:

> Defendant Copeland was involved in the rioters' first breach of the restricted perimeter on Capitol Grounds at 12:53 pm. After pushing on the backs of rioters while the other rioters lifted and pushed bike-rack barricades into USCP officers at the Peace Circle, defendant Copeland walked towards the Capitol Building.

This is a government story narration that was adopted for conviction but is contested by Mr. Copeland. Mr. Copeland had no involvement in assaulting any police and used no force near the Pennsylvania /Peace Circle walkway barriers. At one brief point he touched the back of a person in front of him nearer to the police line and bicycle racks. He was not charged with and did not aid anyone else assaulting police or using force. His testimony was honest in that he was pushed from behind and was attempting to keep his balance to not get stampeded over. There was no concerted endeavor as the PSR makes it sound like. No police witness recognized or recalled Mr. Copeland, despite being shown video.

   3.  PSR Item 13 also asserts:

> Once he arrived on the West Front, he shoved a massive Trump sign into the police line with other rioters at about 1:40 pm. While in the same area, he assaulted an Associated Press photographer with other rioters.

Mr. Copeland honestly testified that he put his hands up on the sign briefly to keep it off people's heads and to keep it from crashing into the photojournalist tower. The PSR photo shows clearly that Mr. Copeland's boy is angled 90 degrees from the police where he cannot have shoved it into police – where evidence showed the police were ordered to take the sign out of the crowd. No police were hit by the sign. No police officer testified as a victim hit by the sign – because none were hit. His Rule 29 Motion made clear that he did not assault the AP photographer – where the

3

government even hid that the photographer refused to testify in another trial. Those who pushed the AP photographer were shown in video deliberately not provided to Mr. Copeland in violation of Brady. The government prejudiced the Court where nothing Mr. Copeland or witness Steve Hill was given credibility, while never being shown as false testimony.

**4.** PSR Item 14 asserts:

While inside, defendant Copeland was present as rioters overran a police line in the Crypt Lobby and while rioters confronted USCP officers in the Capitol Visitor Center. During this time, he encouraged other rioters further into the Building.

The above is a government story narration that the Court used for conviction despite that Mr. Copeland was merely nearby while others confronted police, and he was never part of that. Mr. Copeland admitted waiving to others standing on the east plaza above the glass ceiling panels – where there was no entrance. It was speculation that he was encouraging anyone to enter the building through a non-existent entrance.

**5.** Item 15 of the PSR asserts:

With outstretched arms, the defendant grabbed onto the bike racks and pushed through the bike rack barriers, as other rioters attacked the officers. Officer Caroline Edwards was driven back by the push; her head rammed into a metal handrail, and she was knocked unconscious.

The above is a government embellishment used to convict a man who in no way pushed the bike racks into police or had anything to do with the injury to Officer Edwards. That side of the bike racks involved Ryan Samsel and Ray Epps. The writing is highly prejudicial and falsely asserts force and violence by Mr. Copeland. Mr. Copeland was not part of any joint endeavor or force. Mr. Copeland was near the front because he expected President Trump to show up and wanted to be toward the front where he could see a President he admired. The inclusion of the government's prejudicial photos (with narrative) on page 7 shows the PSR was neither impartial nor independent of government influence.


*Copeland, circled in yellow, pushing on rioters' backs into the barricade*

Despite the above government-captioned photo showing Mr. Copeland being pushed, the Court's prejudice was here again compounded in the PSR.

**6.** Item 20 of the PSR asserts that "Specifically, defendant Copeland placed both hands onto the sign and pushed it into the line of officers."

Mr. Copeland contests this government narrative because the police pulled the sign over to their side of the bicycle racks and then disassembled it, as shown during trial. The defense showed video that the police line held for another 40 minutes, until the police gassed themselves off the line and had to retreat into the building to decontaminate.

7.Item 21 of the PSR ignored trial evidence and relied on witness speculation of what "could have" happened. No trial video showed any officer being downed by the sign as asserted:

> Videos reflected that the sign hit some of the rioters and then downed one officer. Officer Beaver testified that she thought the sign was going to hit her neck and chin and head. Given the sign's physical attributes, Officer Beaver did not want it to hit her or anybody else or to collapse on anybody, including the rioters. At one point, as the sign moved towards the officers, its wheels got caught in between the bars of the bike-rack barricade in front of the police line. This concerned Officer Beaver, because it *could have* lifted the fencing up and thrown it in the direction that the sign was being pushed - into the police.

The discussion was hearsay and speculation. Nothing involving this sign caused a collapse of the police line. Defense video and testimony showed the police line collapsed 40 minutes

later because the police gassed themselves. The discussion is unfairly prejudicial to Mr. Copeland and creates facts not in evidence.

    **7.** Item 22 of the PSR is an unfairly prejudicial conclusion not supported by facts: "Copeland grabbed the metal frame himself and helped the other rioters push the sign into the line of officers." The sign was not pushed into any officer. It hit no officer. No officer witness testified to any such fact about the sign being pushed into him or her. There was no victim. Mr. Copeland did not use force, where the angle of his body made it a physical impossibility for him to have pushed the sign into police who were at a 90-degree angle to him as he kept the sign elevated. He did not use the sign as a battering ram as the government asserted falsely.

    **8.** Items 25-27 are the result of a government Brady violation in hiding exculpatory evidence that the PSR ignored (Motion Rule 29). Mr. Copeland was unfairly prejudiced by a narrative the government knew was false when presented to the Court. Mr. Copeland did not push the reporter and instead yelled at others to leave the man alone – and for all to go away. Video hidden by the government showed the actual perpetrators, as well as the fact that the AP reported previously refused to testify as a victim.

  **B. VICTIM IMPACT**

    The PSR at Item 30 wrongly asserts that:

> The Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense. This offense involved a large crowd of individuals who gathered outside the US Capitol, some of whom ultimately forced entry inside the building. Those individuals' actions included, but are not limited to, breaking windows, damaging property, and assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The incident resulted in substantial damage to the US Capitol, requiring the expenditure of approximately $2,923,080.05 in repairs, as of July 7, 2023.

    **However, the statute requires a human victim and is not applicable to property damage**. The PSR even states "No specific victim officer information was provided to

Probation." Property damage payments are either for the damage to property of a human victim, or when convicted under the specific statute for damage to government property. caused no harm to any human and caused no property damage. Mr. Copeland caused no harm to any human and caused no property damage. No Metropolitan Police (MPD) or USCP officer victims have been identified as being victims to date - meaning over three and a half years after January 6, 2021, no witness or evidence shows Mr. Copeland cause harm to any victim. Not only is a human victim required, but caselaw indicates that a jury was required to make a finding on the matter. No allegation of restitution was made during trial for a finding supported by evidence. Mr. Copeland did not waive his Constitutional right to confront any accuser during testimony. This is an abuse of the statute and restitution is not authorized by law.

### C. ADJUSTMENT FOR OBSTRUCTION OF JUSTICE.

Item 31 of the PSR asserts that:

> The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice when the defendant falsely testified at trial. Specifically, the Court did not find credible defendant's testimony about his version of the events at the Peace Circle, the interaction between police and rioters with the Trump sign, and his interaction with the photographer. Accordingly, a two-level adjustment, pursuant to USSG §3C1.1, is warranted.

This is materially wrong. That the Court chose to not credit Mr. Copeland's testimony and instead favored everything asserted by the government – despite contradictory evidence – **does not equate to false testimony**. The PSA is asserting that any defendant who testifies at trial should be penalized if the Court chooses to adopt the government position, despite how unfair. In truth, the PSR ignored the Brady violation and unfair prejudice conferred on Mr. Copeland that began and continued due to the government's knowingly hiding exculpatory evidence regarding the AP reporter.

### D. THE SECTION "OFFENSE LEVEL COMPUTATION (2023 US SENTENCING GUIDELINES)" HAS MATERIAL ERRORS OF FACT.

1. The entirety of PSR Items 42-66 are an over-computation that involves duplicate counting and adding enhancements that are already included within USSG §2A2.2. The separate groupings are a deliberate effort to overcharge enhancements.

2. Civil Disorder is normally charged as with § 2A2.4 of the guidelines, which is entitled "Obstructing or Impeding Officers." The base offense level under that guideline starts off at level 10. But under that there's a specific offense characteristic that permits an increase of three levels under (b)(1)(A) if the offense involved physical contact or (B) a dangerous weapon was possessed or its use was threatened, then it goes up three more levels. However, here, the civil disorder was alleged as the felony intended by the Section 111(a) charge – where the conduct of interfering with police to interfere with police is the circular result. Here, the indictment for Section 231(a)(3) did not include "with a deadly or dangerous weapon" or physical contact. It is a material error to enhance this charge when no litigation, evidence, or confrontation during trial occurred to add a deadly or dangerous weapon or physical contact.

3. Aggravated Assault. If the conduct constituted aggravated assault, the guideline is § 2A2.2 instead. That guideline starts at level 14, four levels higher, and then it, too, has the specific characteristics that permit, this time, an increase of four levels for the use of a dangerous weapon and only three for its threatened use. And it permits an adjustment if the victim is an official victim that isn't available under § 2A2.2. It is materially incorrect for the PSR to add +6 for official victim since that is already accounted for under § 2A2.2. The PSR is doubling if not quadrupling the criminal points count. The PSR does not contain reference to aggravated assault. It instead separates the Civil Disorder (other felony) into a separate group. The U.S. Sentencing Guidelines application notes say that an aggravated assault is a felonious assault that involves

one of four things: (A) a dangerous weapon with intent to cause bodily injury -- not merely to frighten -- with that weapon; B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate, or; (D) an attempt to commit another felony. There was no aggravated assault. No evidence showed intent to cause serious bodily injury, bodily injury, strangling or suffocating, or attempt to commit another felony. And although the Court found the sign was a dangerous weapon, that is not enough. No state of mind of intent to cause serious bodily injury was shown.

The USSG refers the user to either §2A2.2 or §2A2.4. A reading of §2A2.2 makes clear this is for aggravated assault, and not simple assault, or interfering, impeding, or intent to non-violently impede or interfere. No aggravated assault was shown as long as the PSR separately groups Civil Disorder.

In short, Mr. Copeland argues that the maximum points should be 14, if not 10, where no weapon was used with the intent to cause serious bodily injury.

**4.** Official Victim – no points should be added since §2A2.2 already accounts for this. Under both Sections 111 and 231. There should be no victim related addition.

**5**. There are no legitimate grounds for an upward departure.

### E.  CONDITIONS OF SUPERVISION.

**Mr. Copeland objects to the impermissibly broad and vague statement that "In addition to the mandatory and discretionary conditions of supervision, 18 USC § 3563(a) and (b) and 18 USC § 3583(d), the Court may impose other conditions as they relate to the nature**

**and circumstances of the offense and the history and characteristics of the defendant. 18 USC § 3553(a)(1).**

### III.    CONCLUSION.

The objections are for material errors related to the use of USSG §2A2. And the criminal points enhancements, should be incorporated into changes for the Final PSR. If the parties do not agree such that all objections noted herein are applied to change the final PSR and are just noted at the end of the Final PSR, then the Court should allow time at the beginning of the sentencing hearing on November 22, 2024, to decide on the issues.

Dated October 25, 2024                                        Respectfully Submitted,

                                                              /s/ Carolyn Stewart
                                                              Carolyn Stewart, Esq.
                                                              D.D.C. Bar No. FL0098
                                                              Defense Attorney
                                                              Stewart Country Law PA
                                                              1204 Swilley Rd.
                                                              Plant City, FL 33567
                                                              Telephone: (813) 659-5178
                                                              Email: Carolstewart_esq@protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify on the 25th day of October 2024, a true copy of the foregoing was served upon all parties via email and as forwarded through the Electronic Case Filing (ECF) System.

                                                              /s/ Carolyn Stewart
                                                                Defense Attorney