**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *v.* | ) | **Case No. 1:23-cr-0224 (DLF)** |
| | ) | |
| JONATHAN JOSEPH COPELAND | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Comes now the Defendant, JONATHAN JOSEPH COPELAND, by and through undersigned counsel, and submits this Memorandum in Aid of Sentencing. For all the reasons below, Mr. Copeland asks this Court to impose a sentence with a downward variance, should the Court accept the United States Sentencing Guidelines (USSG) or any enhancements recommended in the Presentence Investigation Report, and otherwise considering the USSG that are not mandatory, for time served, with an order for twelve months of home detention, community service, and one year of supervised release, with no restitution and no fine as a sentence that is sufficient, but not greater than necessary, to accomplish the goals enumerated in 18 U.S.C. § 3553(a). In addition to considering whether prison serves a useful purpose such as for deterrence or further punishment, Mr. Copeland requests the Court to impose a variance to properly reflect the other 18 U.S.C. §3553(a) factors, including the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Mr. Copeland requests to reserve the right to file a supplemental brief with objections given that the final Presentencing Investigation Report (PSR) has not yet been released and he already objected to material errors in computing criminal points and the allowance for an upward departure in the draft PSR. He submits the following in support:

## I.  INTRODUCTION.

A sentencing hearing is scheduled for November 22, 2024. Mr. Copeland has been

incarcerated since May 8, 2024, after having been convicted at a bench trial of Counts 1- 6; and 8

- 9. The Counts were charged as follows:

### COUNT ONE

On or about January 6, 2021 at approximately 12:53 p.m., within the District of
Columbia, JONATHAN JOSEPH COPELAND committed and attempted to
commit an act to obstruct, impede, and interfere with a law enforcement officer
lawfully engaged in the lawful performance of his/her official duties incident to
and during the commission of a civil disorder which in any way and degree
obstructed, delayed, and adversely affected commerce and the movement of any
article and commodity in commerce and the conduct and performance of any
federally protected function.

(Civil Disorder, in violation of Title 18, United States Code, Section 231(a)(3))

### COUNT TWO

On or about January 6, 2021, within the District of Columbia, JONATHAN
JOSEPH COPELAND, using a deadly and dangerous weapon, that is, a large metal
sign, did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an
officer and employee of the United States, and of any branch of the United States
Government (including any member of the uniformed services), and any person
assisting such an officer and employee, while such officer or employee was
engaged in or on account of the performance of official duties, and where the acts
in violation of this section involve physical contact with the victim and the intent
to commit another felony.

(Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in
violation of Title 18, United States Code, Sections 11 l(a)(l) and (b))

### COUNT THREE

On or about January 6, 2021, at approximately 1 :41 p.m., within the District of
Columbia, JONATHAN JOSEPH COPELAND committed and attempted to
commit an act to obstruct, impede, and interfere with a law enforcement officer
lawfully engaged in the lawful performance of his/her official duties incident to
and during the commission of a civil disorder which in any way and degree
obstructed, delayed, and adversely affected commerce and the movement of any

article and commodity in commerce and the conduct and performance of any federally protected function.

(Civil Disorder, in violation of Title 18, United States Code, Section 23 l(a)(3))

## COUNT FOUR

On or about January 6, 2021, within the District of Columbia, JONATHAN JOSEPH COPELAND did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting, without lawful authority to do so, and, during and in relation to the offense, did use and carry a deadly and dangerous weapon, that is, a large metal sign.

(Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, Section 1752(a)(l) and (b)(l)(A))

## COUNT FIVE

On or about January 6, 2021, in the District of Columbia, JONATHAN JOSEPH COPELAND did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions, and, during and in relation to the offense, did use and carry a deadly and dangerous weapon, that is, a large metal sign.

(Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(2) and (b)(l)(A))

## COUNT SIX

On or about January 6, 2021, in the District of Columbia, JONATHAN JOSEPH COPELAND did knowingly engage in any act of physical violence against any person and property in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting, and, during and in relation to the offense, did use and carry a deadly and dangerous weapon, that is, a large metal sign.

(Engaging in Physical Violence in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(4) and (b)(l)(A))

## COUNT EIGHT

On or about January 6, 2021, in the District of Columbia, JONATHAN JOSEPH COPELAND willfully and knowingly engaged in an act of physical violence within the United States Capitol Grounds and any of the Capitol Buildings.

(Act of Physical Violence in the Capitol Grounds or Buildings, in violation of Title 40, United States Code, Section 5104(e)(2)(F))

## COUNT NINE

On or about January 6, 2021, in the District of Columbia, JONATHAN JOSEPH COPELAND willfully and knowingly paraded, demonstrated, and picketed in any United States Capitol Building.

(Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G))

## II. OBJECTIONS TO THE DRAFT PSR.

The objections will be more fully addressed with further legal argument upon release of the final PSR. For purposes in aid of sentencing, the draft PSR, which used an unsolicited memorandum – that both the PSA and DOJ refused to provide to the defendant upon request – with no support in the Federal Rules of Criminal Procedure which only allow the government to provide objection input after the draft PSR is released, wrongly applies the USSG and double counts what is already incorporated in or not allowed under the USSG.

**A. The draft PSR wrongly used USSG §2A2.2 for the Civil Disorder Counts and Wrongly Enhanced the Criminal Points.**

The draft PSR says the most analogous offense guideline for Counts One and Three is "USSG §2A2.4; however, the cross reference at USSG § 2A2.4(c)(1) notes that if the conduct constituted aggravated assault, apply USSG §2A2.2." Mr. Copeland was not convicted nor was any evidence shown that he committed aggravated assault as part of his civil disorder charges. He was found guilty of obstructing officers. Verdict Transcript 35:10-12. He never made any

direct contact with any officer. The difference between §2A2.2 and § 2A2.4 is that §2A2.2 requires the element of aggravated assault while §2A2.4 concerns obstructing or impeding.

First, the aggravated assault guideline does not apply here because the government adduced no evidence of aggravated assault in the Civil Disorder charge. The Sentencing Commission defines aggravated assault to mean a felonious assault that involves (1) a dangerous weapon with the intent to cause bodily injury with that weapon; (2) serious bodily injury; (3) strangling, suffocating, or attempting to strangle or suffocate; or (3) an intent to commit another felony. See U.S.S.G.§ 2A2.2 definition 1.

To establish federal generic assault, the government must prove (1) "a willful attempt to inflict injury upon the person of another," or (2) "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *United States v. Dat Quoc Do*, 994 F.3d 1096, 1099 (9th Cir. 2021). However, none of those § 231(a)(3) elements implies that he willfully attempted to inflict bodily injury on an officer. He did not. Similarly, a "threat to inflict injury upon the person of another" must be intentionally made by the defendant. That is, if the defendant intended his acts to interfere with a person but not threaten them with bodily injury, he is not guilty of assault. *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990); see also *United States v. Roberts*, 915 F.2d 889, 890 (4th Cir. 1990), cert. denied, 498 U.S. 1122, 111 S. Ct. 1079, 112 L. Ed. 2d 1184 (1991).

Second, even if the government had established that Mr. Copeland's conduct constituted a basic assault, U.S.S.G. §2A2.2 would not apply because it has not shown an "aggravated assault." Even if the sign was a "dangerous weapon," that was merely carried and touched as the evidence showed, the government has not proven that Mr. Copeland had the intent to "cause bodily injury" with it, as required under U.S.S.G. §2A2.2 cmt. n.1, as opposed to using it to "obstruct, impede,

[and] interfere with" law enforcement. § 231(a)(3). Nor was he accused of and tried for committing Section 231(a)(3) Civil Disorder to commit another felony as required for aggravated assault. The PSR wrongly juxtaposes the Section 111(b) assault charge, without support from the Indictment (ECF 29), the trial, or the verdict.

Third, even if Mr. Copeland somehow made "physical contact" with an officer (without making any direct physical contact as the evidence showed), the § 111(a)(1) offense is not "another felony" as charged, tried, or proven, and thus U.S.S.G. §2A2.2 is not satisfied. In fact, the PSR is nonsensical in that it makes Count One its own group, without being grouped with the "another felony" offense (that does not exist). **The PSR further wrongly enhances Counts One and Three as follows:**

**Base Offense Level:** Pursuant to USSG §2A2.2(a), an offense involving aggravated assault has a base offense level of 14. **14**

51. **Specific Offense Characteristics:** Because a dangerous weapon was otherwise used [to wit: the defendant used a bike rack barricade to push into the police line], 4 levels are added. USSG §2A2.2(b)(2)(B). **+4**

52. **Victim Related Adjustment:** Because the victim was a government officer and the offense of conviction was motivated by such status [to wit: the USCP officers were wearing uniforms and standing with a group of similarly dressed officers, guarding a barricade in an attempt to defend the Capitol and stop the rioters from breaching police lines and further enter restricted Capitol grounds], USSG §3A1.2(a)(1) and (2), and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), six levels are added. USSG §3A1.2(b). **+6**

53. **Adjustment for Role in the Offense:** None. **0**

54. **Adjustment for Obstruction of Justice:** The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct; or a closely related offense [to wit: the defendant's false testimony at trial]; therefore, two levels are added. USSG §3C1.1 **+2**

55. **Adjusted Offense Level (Subtotal): 26**

**Based on the Indictment and conviction, and as used in almost every case of Civil Disorder, whether a plea or trial conviction,** USSG §2A2.4 with a base offense level of 10 should be applied to both Counts One and Three. At most, the total should be 13 if the dangerous weapon is counted as being used for the civil disorder. However, this is highly dubious since he was not charged with using a deadly or dangerous weapon to obstruct, where Civil Disorder was the "another felony" using the exact same facts for conduct in interfering that were used under the assault charge. The verdict Transcript makes no mention of finding use of a deadly and dangerous weapon for Counts One and Three.

There was no official or any other victim. The sign hit nobody.  The Civil Disorder obstruction was tried as interfering with the federal function of protecting the building. The allowance for adding +3 for a deadly or dangerous weapon would be useless if without meeting the criteria for aggravated assault, all Civil Disorder charges were to use §2A2.2. They do not and have not. Both here and for assault, no intent to cause serious bodily injury was shown. That there was no victim was shown.

The +6 for official victim is wrong. Note 2 states that the base offense level includes the fact that the victim was a government official. That is baked in. Any addition of a victim enhancement is double counting, whether under §2A2.2 or 2A2.4. The assertion that Mr. Copeland obstructed justice, where +2 should be added, is wrong. The Court did not credit what he saw, perceived, and believed. Mr. Copeland did not present false testimony, nor did he commit perjury as defined in U.S.S.G. §3C1.1. This is being added as a penalty for testifying. In accordance with his recollection years after  the January 6th of the events involving his conduct and reasons while near the Peace Circle breach, and events leading up to and during his touching of the sign, interaction with police officers, interaction with the AP reporter, and entry into the building, he did not have

the intent to, and did not willfully, mislead the Court (fact-finder) as he testified. He merely presented his recollection and explanation as to his involvement and conduct. The Coose toe prefer the government's stories that added narration and interpreted videos. Accordingly, a two-level enhancement for obstruction is not appropriate since he did not falsely testify at trial.

**At most, USSG §2A2.4 should apply to Counts One and Three, with a base offense level of 10, with +3 for the touching of the sign since the court said it was a dangerous weapon, for a total of 13. The guideline range for imprisonment without any variance is 12 – 18 months, while the majority of civil disorder cases have been sentenced to well under a year, with numerous sentences of probation or home detention.** Nothing in the USSG allows for an upward departure here.

**B.  The draft PSR Wrongly Enhanced the Criminal Points For Count Two Assault**.

The draft PSR states that for Count Group 2: Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, 18 USC §§111(a)(1) and (b):

56. Base Offense Level: The guideline for 18 USC § 111(a)(1) offenses is found in USSG §2A2.2 of the guidelines. That section provides that an offense involving aggravated assault has a base offense level of 14. USSG §2A2.2(a). 14

57. Specific Offense Characteristics: Because a dangerous weapon was otherwise used [to wit: the defendant pushed a Trump billboard into the line of police], 4 levels are added. USSG §2A2.2(b)(2)(B). +4

58. Specific Offense Characteristics: Because the defendant was convicted under 18 USC §111(b), 2 levels are added. USSG §2A2.2(b)(7). +2

59. **Victim Related Adjustment:** Because the victim was a government officer and the offense of conviction was motivated by such status [to wit: the USCP and MPD officers were wearing uniforms and standing with a group of similarly dressed officers in a police line, in an attempt to defend the Capitol and stop the rioters from breaching police lines and further enter restricted Capitol grounds], USSG §3A1.2(a)(1) and (2), and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), six levels are added. USSG §3A1.2(b) **+6**

60. **Adjustment for Role in the Offense:** None. **0**

61. **Adjustment for Obstruction of Justice:** The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive

conduct related to the defendant's offense of conviction and any relevant conduct; or a closely related offense [to wit: the defendant's false testimony at trial]; therefore, two levels are added. USSG §3C1.1 **+2**

62. **Adjusted Offense Level (Subtotal): 28**
**The multiple count adjustment then added +2 for a total of 30.**

The USSG commentary n.1 defines "aggravated assault" as a felonious assault that involved (A) a dangerous weapon with intent to cause serious bodily injury (not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony. In its verdict, the Court found that Mr. Copeland intended to commit another felony, with that felony being Count Three with the exact same conduct of obstructing. At no time did any evidence or did the verdict show that Mr. Copeland intended to cause serious bodily injury. Under note 3, the base offense level should be enhanced only if the intent to cause serious bodily injury was shown. It was not. For the facts in this case, the only reason that §2A2.2 can apply is due to the offense being used to commit another felony, which should be "different" as "another" rather than the exact same conduct of obstructing or interfering. The Court found that Mr. Copeland "interfered" under Count 2. Verdict Transcript 7:22-24. The court found that he "intended to interfere." Verdict Transcript 11:15-17. While speculative testimony was that the sign *could have* caused injury, there was no finding that Mr. Copeland intended anything but to interfere. Verdict Transcript 15:4-7. In fact, the Transcript stated that video "shows Copeland pushing the sign **forward and above** the police line." Transcript 20:10-11. (Emphasis added).

Further, there was no direct contact ever by Mr. Copeland with police, there was no victim, and the sign never hit a police officer. The police pulled the sign over the bicycle racks and quickly disassembled it. At most, if using §2A2.2(b)(2), and the dangerous weapon sign was brandished or its use was threatened, then only +3 can legitimately be added. This would bring the total points

arguably to 17 total.  §2A2.2 already has an official victim baked in, so nothing additional should be added for a victim – especially when there was no victim.

Arguably, the conviction for 111(b) allows a +2, but again, this was not for aggravated assault under Note 3. It is double counting to apply +3 for §2A2.2(b)(2) and then +2 for 111(b) when aggravated assault was never shown, and the court found intent to commit another felony (Civil Disorder) that 100% bootstrapped the exact same conduct of obstruction/interference.

Obstruction of justice does not apply here for the same reasons as addressed in Counts One and Three.

**C.  Other Issues**

The multiple count adjustment is questionable and will be addressed with the final PSR if needed.

There is no legal justification for restitution when there was no human victim and Mr. Copeland caused no harm to any person.

The Brady violation regarding the AP Reporter still stands. The government failed to disclose that the AP reporter refused to testify in the case involving those who did push him. The government failed to disclose the entire video in its possession that showed Mr. Copeland was never suspected of pushing the reporter, did not push the reporter, and was merely suspected of being in the nearby crowd. See ECF No. 91-1, which the government failed to disclose as required under Brady, where Mr. Copeland was listed as only having a verbal altercation (unknown words).

There is no legitimate justification for an upward departure.

Any issues with the USSG recommended by the PSA for the other charges will be addressed in a supplemental when the final PSR is released.

## III.  LEGAL STANDARD – THE POST-BOOKER SENTENCING FRAMEWORK AND THE GUIDELINES ARE NOT MANDATORY.

The Court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. In early 2005, the United States Supreme Court declared that the Guidelines are advisory, rather than mandatory. *United States v. Booker*, 543 U.S.220, 125 S.Ct. 738, 160 L. Ed 2d 621 (2005). Although the Court must consider the Guidelines in imposing a reasonable sentence, the Guidelines are now merely "advisory," constituting just one factor to be considered on equal footing with the other sentencing factors found in 18 U.S.C. §3553 (a). Section 3553(a) directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a) as endorsed by Booker, sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

18 U.S.C. § 3582.

The Booker Court re-emphasized that the primary sentencing mandate of §3553 (a) is that courts must impose the least amount of imprisonment and sentence necessary to achieve the statutory purposes of punishment-justice, deterrence, and rehabilitation; the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(2). 18 U.S.C. §3553(a).

In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court held that the sentencing guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. §3553 (a). In two more recent summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009). Instead, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a). Further, as the Supreme Court reiterated, in imposing sentence, "the punishment should fit the offender and not merely the crime." *Pepper v. United States,* 131 S.Ct. 1229, 1240 (Mar. 2, 2011).

## IV. BACKGROUND.

Mr. Copeland is a peaceful man with loving friends and family. See Exhibit letters. He lives a blue-collar life, where he takes pride in his work, works hard, has a good reputation for being a hard, conscientious worker, and lives modestly. He had a minor conviction over 10 years ago, where as a 20 year old he got into a fight.

He went to the save America rally on January 6, 2021, because he wanted to see Mr. Trump. He had never been to a President Trump rally, and this portended to be the last. He said he supported Mr. Trump as president and admired his performance. He did not travel with any other intent. He had to "hitch" a ride because he could not afford to go on his own. He did not bring tactical gear, a gas mask, or anything but regular civilian clothing. He did not have any plan to go to the U.S. Capitol building until he heard talk while near the Ellipse at the rally. He was far away from the U.S. Secret Service restricted area because the line was too long to enter, and it was very crowded. He could not hear parts of the speech but he heard that President Trump was going to the Capitol. Thinking that the events at the U.S. Capitol were going to be a continuation of the rally, Mr. Copeland left before the speech was over so that he could be towards the front for the next rally sequence.

Mr. Copeland admitted to using poor judgement in his actions at the police line at the Pennsylvania walkway near the Peace monument. He momentarily touched the bicycle rack, where that was for both balance and to keep it from falling into anyone. He was pushed from behind. He regrets moving forward rather than finding a route to exit the area when he perceived the threat of being trampled. He apologizes and is remorseful for having crossed around the walkway barriers after the police retreated toward the building. He did nothing to harm police.

He did proceed toward the west front plaza but was honest in stating that he stayed back from the police line and did not cross a police line. He is remorseful for anything he did to violate any law. He asks for understanding because he was confused and thought he was allowed to be near the west plaza. He could not see why pepper spray was being used and there were no announcements made for anyone to leave the area. The signals to him were conflicting and in retrospect he wishes he had left or had any indication that people were not allowed to stay. He is remorseful about his judgment in staying outside on the west in confusion. He did not know the area had in any way been closed to protect a USSS protectee. He did not ever intend to hurt anyone and while he chanted against "ANTIFA," he did not take any physical action to harm anyone. He did see the sign headed toward the photojournalist tower where it could crash, and did not turn his body to have leverage to push the sign with any weight toward police. He intended to hold it up and get it out of the way.

He asks the Court to recognize that he was there as a peaceful American who respects the rule of law, and that in retrospect he understands that he received mixed, confusing signals as to what was happening and where he could be. Mr. Copeland knows that hindsight is 20/20, and asks the Court for leniency in understanding that he did not intend to violate the law when he saw what he thought was allowable presence near the building, and then an open door where his curiosity led him astray.

**V.  § 3353(a)'s Sentencing Factors**.

**A.  Using § 3353(a)'s Sentencing Factor: Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense, Mr. Copeland Should be Released from the D.C. Jail on November 22, 2024, for Prison Time Served**.

Mr. Copeland has deep regret and remorse that he violated any law, and takes responsibility for conduct that led to conviction, despite his lack of intent to act criminally, and while still

contesting that his testimony was not given credibility. Mr. Copeland has respected the directives, rules, and orders of his security officers at the D.C. jail for his entire period of incarceration. He will support and show respect for police upon his release. For the entire time between January 6, 2021, and his May 8, 2024 incarceration he violated no laws, obeyed his conditions of supervised release, and was a peaceful hardworking man. Mr. Copeland's incarceration has accomplished the above goal of sentencing. He was punished before his incarceration by ostracization in the news media given the DOJ press releases and eagerness of local media to report on his arrest and case. The "overarching instruction" of 18 U.S.C. § 3553(a) is to "'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." *Kimbrough v. United States,* 128 S. Ct. 558, 570 (2007). Mr. Copeland's sentence of time served meets *Kimbrough*.

**B. Adequate Deterrence has Already Been Enacted**.

Mr. Copeland's aspirations and hope for a positive future leave no room for criminal behavior or recidivism. He is fully aware every day that nhe has been convicted of multiple felonies. He knows he now has serious criminal history points that will turn him into an old man in prison if he commits another crime anywhere. He has lived in a jail where the food is non-nutritious and commissary canned and packaged foods, largely processed and also unhealthy, are his daily staples.He cannot see family and friends. He cannot do the daily blue collar construction work that fulfilled his life and gave him the ability to take care of himself and to help others before May 2024. He no longer has a residence and upon release will likely have to move in with family while he tries to regain the ability to support himself. He has no savings. He has lost everything but his faith in God, and the friends and family who stood by him.

**C.  There is No Element of the Public that Needs Protection from Mr. Copeland**.

Mr. Copeland is remorseful about his misguided judgement that led to conduct of conviction. He should have figured out that he could not be present. But at no time did he intent any harm against anyone. He did not hurt anyone. He did not break anything. He is not a drug dealer, gang member, sex offender, or among the host of other criminals who have high recidivism rates. The members of his community and family have expressed that they will feel safe having him return home. They know he will again be a productive member of the community and good citizen. Mr. Copeland asks this Court to give him the opportunity to show his value to society. A period of home detention where he can work, go to church, and go to the medical therapy needed for his affliction (filed sealed previously) are warranted based on his history and characteristics. He needs his network of support and to be productive. None of this, including church services, have been offered in jail to date and will not be afforded in federal prison.

**D.  Prison is Not Going to Provide Education or Vocational Training, Nor Medical Care**.

Mr. Copeland has a skilled vocation as a concrete layer and in construction. He was a member of a union in Ohio. COVID led to reduction of contracts for work, and in attempting to keepo himself employed, he started his own business.  That is now gone but Mr. Copeland has not given up and will explore all opportunities. He expects that he will be able to be employed upon returning home. The construction business is looking up and he will enthusiastically be a working, contributing member of society. He has his GED and is not seeking nor does he need college for his blue collar work. He does not need a second vocation, if he were to be sent to a federal facility that would provide this. The only medical care he has been offered in jail to date was to take drugs rather than the therapy he can obtain if allowed to go home.

**E.  The Need to Avoid Unwarranted Disparities**

Mr. Copeland will address specific sentencing for similar offenses when the final PSR is received. At this time, the draft PSR recommends well beyond similar January 6th cases that involve both Section 231 and Section 111 when there was no direct or intended contact with police. As examples, Robert Dennis in 1:21-CR-679 was convicted of two direct contact assaults, Section 231 and multiple 18 USC Section 1752 and 40 USC Section 5104 crimes. His sentence was 36 months. Multiple Section 231 crime used Section 2A2.4. Troy Sargent was convicted of Section 231, Section 111(a)(1) and the misdemeanors and he received 14 months. 1:21-cr-258. More examples will be provided with the final PSR.

**F.  Mr. Copeland Requests that No Fine be Assessed**.

The PSR shows that he cannot afford a fine. Jonathan has had no income since being incarcerated. He has no medical health insurance. He has no vision or dental insurance. Those costs are not fairly factored into his already negative monthly cash flow. He is sincere in saying that he is remorseful for violating any law and will be fully engrossed in re-establishing employment and returning to all the positive things he did in his community. He is a skilled construction worker in concrete with a superb work reputation. He did not cause property damage or personal injury and asks to not be assessed a fine that he cannot afford to pay. He has not profited from crime in any charity donations. While some small amount was given to the account holder, any and all contributions, small as they were, have gone to his commissary and phone costs while incarcerated. There is no charity fund money anywhere.

**G.  The Court Should Limit Supervised Release to One Year**.

The purposes of supervised release will be exhausted by one year. Supervised release and

conditions align closely with sentencing. Pursuant to § 3583(d), the applicable, relevant conditions of supervised release must:

[1] be reasonably related to at least one of the following: the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical, or other correctional needs.

[2] ... involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation.

[3] ... be consistent with any pertinent policy statements issued by the Sentencing Commission.

The above factors were addressed under 18 U.S.C. § 3553(a). Mr. Copeland may need to obtain contracts that go well outside his residence district, and require overnight trvel with temporary lodging. A lengthier period of supervised release portends to be a greater deprivation of liberty than necessary for sentencing and the § 3583(d) factors' purposes. Mr. Copeland faces many  challenges, but none include future criminal activity. He is a decent man who will obey the law.

**CONCLUSION**

WHEREFORE, the Court should accept Mr. Copeland's proposal for release for time served, potentially a year of home detention, and a year of subsequent supervised release.

Dated November 4, 2024                  Respectfully submitted,

                                        /s/ *Carolyn A. Stewart*
                                        Carolyn A. Stewart, D.D.C. Bar No. FL-0098
                                        Defense Attorney
                                        Stewart Country Law PA
                                        1204 Swilley Rd.
                                        Plant City, FL 33567
                                        Tel: (813) 659-5178
                                        Email: Carolstewart_esq@protonmail.com

**CERTIFICATE OF SERVICE**

I hereby certify on the 4th day of November 2024, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ *Carolyn A. Stewart*
Carolyn A. Stewart, Esq.