UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Case No. 1:23-cr-0224 (DLF) |
| ) | |
| JONATHAN JOSEPH COPELAND ) | |
| ) | |
| Defendant.   ) | |

**<u>DEFENDANT'S RESPONSE TO GOVERNMENT SENTENCING MEMORANDUM</u>**

Comes now the Defendant, JONATHAN JOSEPH COPELAND, by and through undersigned counsel, and respectfully provides his Response with objections to the government's sentencing Memorandum at ECF No. 114 pursuant to the Court's scheduling minute Order dated October 24, 2024, as follows:

**OBJECTIONS TO THE GOVERNMENT'S CLAIMS**

The government spent the first 25 pages of its Memorandum at ECF No. 114 relitigating the case with embellishment if not misrepresentation of facts to unjustly portray Mr. Copeland in a bad light.

Mr. Copeland's post-verdict Rule 29 Motion and sentencing Memorandum at ECF No. 115 at 10 already addressed the false claim made at trial that he pushed the AP photographer and committed violence against a reporter where in violation of Brady, the government hid that the men who did push the AP reporter were tried or pled guilty, that they had been pushing the reporter across an area for some time as captured on video hidden from the defense and Court, that the government's own evidence in those cases showed that all Mr. Copeland did was to use some words that were not audible in the video, and importantly that the AP reporter refused to testify as a victim against the actual perpetrators. Ignoring truth and evidence, the government again refers

to its prior presentation of falsehoods, expecting the Court to not address error in conviction based on government misrepresentations. ECF No. 114 at 21; 31. Only government narration at trial added that Mr. Copeland pushed the man, when Mr. Copeland recalled that he pointed and told the man to leave and may have momentarily touched the man in pointing – and did not push the reporter off the ledge. The evidence that the government concealed exculpates Mr. Copeland, and at a minimum, shows there was no victim.

The government in a concerted effort to create unfair prejudice prior to trial and then at trial caused this Court to not credit any of Mr. Copeland's testimony, and now pursues piling on obstruction of justice enhancements when the entire conviction should instead be vacated.

Showing prejudice was established prior to trial, on January 23, 2024 the Court requested from the government for review before trial the videos of alleged assault with time stamps. This was an email from Court deputy Mr. Hopkins to the government prior to the original January trial date under Mr. Copeland's former attorney just as the undersigned was entering the case. Mr. Copeland's former attorney wrote that he would address the issue but never did – no=r did he provide the video at issue to the undersigned. The Court's review of the video was a fait accomplish before the undersigned was officially Mr. Copeland's attorney.

The prejudice extended to all matters. In engaging a new attorney who would actually prepare for trial rather than just demand that Mr. Copeland sign a guilty plea to Section 111(a) and (b) and Section 231(a)(3), Mr. Copeland was accused by the Court of deliberately delaying his trial. The Court went so far in a January 24, 2024, public docket Minute Order of accusing the undersigned of "evolving reasons" of needing time to provide effective representation when prior counsel never even accessed the data bases where the discovery was, and never provided t=it to Mr. Copeland, with the paralegal being the only one communicating with Mr. Copeland.  The government can

claim success in causing unfair prejudice before trial ever started, where the Court discounted truth before and at trial.

The government in effect claimed that Mr. Copeland had superman X-Ray vision and could see through the backs of 10 or more people densely packed to know that anyone pushed over the unmanned street bicycle racks. Already prejudiced, the Court believed this despite video at trial showing that Mr. Copeland was not in line of sight of the street bicycle racks. The government's picture at ECF No. 114 at 10 is deceptive as to what happened and where Mr. Copeland was located.  He did walk around the downed rack and admitted that.

The government convinced the Court at trial to convict Mr. Copeland of the actions of others at the Pennsylvania walkway. He touched the person ahead of him and was pushed, and did fear being trampled as chaos ensued. He had nothing to do with any push that caused any officer to fall or have to try to replace the bicycle rack. The government's picture at Exhibit 9 (Memorandum at 12) is deceptive. Mr. Copeland said he tought he may have momentarily touched the rack in trying to pull it back up. What the government fails to address is the incorrect circling of someone else's arm and calling it Mr. Copeland's arm. Serendipitously, the Defense found the below picture in another case, which shows the government's picture hides truth. This picture shows that Mr. Copeland tried to pull a person pushing toward police back, and tht he had nothing to ioth the bicycle rack at the point at issue:

3



The arm circled ion government exhibit 9 is a left arm, with a different colored jacket than Mr. Copeland was wearing. Mr. Copeland's right and left arms are trying to pull a man back from the police and barricade. Yet the government circled another man's arm and claimed it was Mr. Copeland's arm, as if he were pushing on the rack and fencing.

The government's depiction at trial and in its ECF No. 114 is another Brady violation because the above picture, in high enough quality to see the different colored jackets, came from Case No. 21-cr-537 that went to sentencing several months ago, where the picture from high enough quality to see color distinctions and positioning of people was available before Mr. Copeland's trial.

The video containing the picture at exhibit 13 was never introduced at trial. At no time doid the government show the billboard sign in the vertical position. A jury would never have seen Exhibit 13. ECF 114 at 16. The government is introducing facts (not in evidence) in its sentencing memorandum that the sign hit "rioters" that was never shown at trial. The Defense had requested any video of the sign while it was upright and the government refused to provide it – telling the Defense to search tower video.

Mr. Copeland continues his objections to the speculation offered by Officer Beaver that is also contained in the government's memorandum.

Mr. Copeland objects to the recommended sentence as contained in his objections to the draft PSR. He reiterates that the government illegitimately insert itself in the PDSA PSR process by submitting a secret memorandum prior to completion of the draft PSR. Provision of the draft PSR is the only time the government is allowed to try to influence the final PSR. The PST was not impartial and it was not fair, where the PSA and DOJ have an under the table arrangement for the government to interject what should be written in the draft.

Mr. Copeland objects to any restitution. He did not harm anyone or property. He was not charged with damaging government property. There was no individual victim. None of his convictions involved direct or proximate harm to any human victim. The matter was never even raised at trial. All the caselaw is against the imposition of restitution here:

    a. "legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. KEETON ET AL., supra, § 41, at 264." *U.S. v. Monzel*, 641 F.3d 528, 535-36 (D.C. Cir. 2011).

    b. "restitution statutes define 'victim' as a person directly and proximately harmed 'as a result of' the defendant's offense, e.g., 18 U.S.C. § 3663(a)(2); id. § 3663A(a)(2); id." *U.S. v. Monzel*, 641 F.3d 528, 536 (D.C. Cir. 2011). (Emphasis added).

    c. "The purpose of the MVRA, then, is 'essentially compensatory: to restore a victim, to the extent money can do so, to the position [the victim] occupied before sustaining injury.'" *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012)((quoting *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir.2006)).

    d. "The MVRA places the burden on the government to prove the victim's loss by a preponderance of the evidence. 18 U.S.C. § 3664(e)." *United States v. Fair*, 699 F.3d 508, 513 (D.C. Cir. 2012).

## CONCLUSION

The Court should approve Mr. Copeland's sentencing Memorandum and its sentencing recommendation.

Dated November 15, 2024                      Respectfully submitted,

                                            /s/ *Carolyn A. Stewart*
                                            Carolyn A. Stewart, D.D.C. Bar No. FL-0098
                                            Defense Attorney
                                            Stewart Country Law PA
                                            1204 Swilley Rd.
                                            Plant City, FL 33567
                                            Tel: (813) 659-5178
                                            Email: Carolstewart_esq@protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify on the 15th day of November 2024, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ *Carolyn A. Stewart*
Carolyn A. Stewart, Esq.
